**STATE of Maine**

v.

**Vance G. TIBBETTS.**

Supreme Judicial Court of Maine.

Jan. 26, 1973.

**884**

John L. Merrill, Asst. County Atty., Skowhegan, for plaintiff.

Grossman, Faber & Miller, P.A. by Edward B. Miller, Rockland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This is an appeal by the defendant following a conviction for breaking, entering and larceny in the nighttime. 17 M.R.S.A. § 2103.

The appellant and one Patrick Eagan were separately indicted and, because the facts were identical, the two indictments were consolidated for trial. The propriety of this consolidation was originally challenged but that issue was not raised on appeal.

The appellant, in his statement of points on appeal, assigned eleven alleged errors. However, only six of these were urged as a basis for sustaining the appeal and we consider the others to have been waived. The appellant's brief states the issues in the following language:

"1. The Court erred in refusing to grant a motion for a mistrial based upon the County Attorney's contact with a juror during trial.

2. The Court erred in allowing testimony in reference to the possible stealing of a motor vehicle, such testimony being prejudicial to the Appellant.

3. The Court erred in refusing to grant a motion for a mistrial based upon the testimony of Linda Murray.

4. The verdict is contrary to the weight of the evidence and not supported by substantial evidence.

5. The Court erred in refusing to grant a motion for a mistrial predicated upon the County Attorney's closing statements to the jury.

6. The Court erred in charging the jury."

We will consider these points in that order.

*Point 1*

The jury was not sequestered but the record clearly demonstrates periodic admonitions by the Justice presiding which, if complied with, would preserve the integrity of the jury from exterior influence during the course of the trial. During one of the noon recesses the County Attorney was seated at a table in a local restaurant, engaging in some general conversation with a friend. He belatedly realized that one of the jurors was seated at this same table but, beyond a very general reference to the trial, none of the conversation related to the pending proceedings. The County Attorney made an immediate report of the

episode to the presiding Justice. The juror involved was summoned into chambers, admonished that he was under oath, and carefully examined by the Justice in order to determine whether any prejudice resulted from this inadvertent contact with the County Attorney. At this hearing the appellant was present, as was his counsel, and the Justice reached the conclusion that no prejudice had resulted from these facts.

 The rule seems clear that while an inference of prejudice may arise from a conversation between a juror and an unauthorized person, it may be rebutted by clear and convincing proof produced by the State. The presiding Justice has discretion in ruling on this issue. State v. Duguay, 158 Me. 61, 178 A.2d 129 (1962). There is no reason why this rule should not apply to contact between a prosecuting attorney and a member of the jury. Stover v. District of Columbia, D.C.Mun.App., 32 A.2d 536 (1942). The record shows no abuse of judicial discretion.

### Point 2

 Although the indictment alleged only the burglarious larceny of a checkwriter, the State introduced evidence from which the jury could find that a red and black Chevrolet car was likewise stolen. On the several occasions when this motor vehicle was mentioned by the State's witnesses, the appellant registered an objection premised upon the philosophy that he was not charged with the larceny of a motor vehicle and, therefore, the evidence was not only irrelevant but highly prejudicial.

The chief witness for the State (Linda Murray) had testified that Mr. Tibbetts was motivated by a desire to leave the State and go to Florida. The jury could believe from her testimony that shortly before the crime was committed a Pontiac automobile which was being used by the appellant and Patrick Eagan became inoperable.

The testimony of Carl E. Peterson, the owner of the burglarized building known as Peterson's Auto Body Shop, clearly indicated that the Chevrolet car, the checkwriter, and a checkbook were missing from this structure. The owner had inspected the building at approximately 9:00 p. m. on February 7 and found everything secure. At 7:30 a. m. on February 8 the break was discovered. The Chevrolet car was located before daylight on February 8, abandoned near the New Hampshire line in the town of Gilead, approximately one hundred miles westerly of Skowhegan.

It is clear to us that this evidence was properly admitted. It was relevant and material not only as direct proof that the crime was committed in the nighttime, but also to show the intent and purpose underlying the illegal entry. State v. Wyman, 270 A.2d 460 (Me.1970); State v. Smith, 277 A.2d 481 (Me.1971); State v. Sanborn, 157 Me. 424, 173 A.2d 854 (1961).

### Point 3

 Linda Murray quoted the appellant as saying that his wife "had a warrant out" for his arrest. The type of warrant that the appellant referred to was not described, but it supplied the reason underlying the appellant's desire to leave the State of Maine. As such, this testimony was clearly relevant to indicate a motive for the commission of the crime alleged. No citation of authority is needed to support the admissibility of such evidence.

### Point 4

 Assuming (as we must) that the jury believed the testimony of Linda Murray, the verdict is supported by the evidence. The Justice below was entirely correct in refusing to grant a motion for a judgment of acquittal.

Mrs. Murray testified that on the evening in question she met the defendant and Patrick Eagan and accompanied them to a

trailer in Skowhegan, where the Pontiac car in which they were riding became inoperable. She then stated that the appellant and Eagan left the trailer, returning some time later driving a red and black Chevrolet automobile, and having with them a checkwriter and a checkbook. She described Tibbetts and Eagan as making out numerous checks with the use of the checkwriter, which imprinted the name of the payor, "Peterson's Auto Body Shop," this being the structure allegedly broken and entered by the defendant. She further testified that they left this trailer in the Chevrolet, taking with them the checkwriter and checkbook, picked up another young lady (Rebecca Michaud) and drove to the New Hampshire line where the car was abandoned.

In the early hours of the following morning the police discovered the abandoned vehicle, and it was identified as belonging to Mr. Peterson. During a search of the snow covered area two days later, the checkwriter was likewise found and subsequently identified by Mr. Peterson as having been taken from his building on the evening in question. A search of the vehicle also disclosed ten checks imprinted with a checkwriter and identified by Mrs. Murray as being those checks written in the trailer by the appellant before leaving Skowhegan.

The State also offered the testimony of Linda Murray's husband who, while an inmate of the Somerset County Jail, talked with the appellant and Eagan. Although his testimony was somewhat ambivalent,[1] the jury could have inferred from it that both Tibbetts and Eagan admitted stealing the automobile and the checkwriter.

Adopting the legal proposition that "the possession of stolen goods subsequent to the theft creates inference of guilt, not only of larceny . . . but also of the breaking and entering when larceny is a part of such greater crime," there was ample evidence to support the verdict of the jury. State v. Saba, 139 Me. 153, 158, 27 A.2d 813, 816 (1942); State v. Poulin, 277 A.2d 493 (Me.1971); State v. Gove, 289 A.2d 679 (Me.1972).

### Point 5

The appellant did not testify. In his closing argument defense counsel argued strongly that the State should have produced additional witnesses, particularly Rebecca Michaud. In rebuttal the County Attorney made the following statements to the jury:

"Now I also want to submit this to you. Mr. MacMichael [defense attorney] has made much of the power and authority of the State to investigate, and the lack of witnesses here. Just let me tell you this, Ladies and Gentlemen, he has just as much power . . . to obtain each and every witness that he wants or needs, or they need or want, as the State does. So, if he's got any questions as to why certain witnesses weren't here, it's his own fault, because he could have gotten them here as well as we.

And who, after all, Ladies and Gentlemen, knows what takes place at the scene of a crime? Probably those that have committed the crime, if you find that these two defendants did so do, know more about it than anyone else. Even the investigators. But that's a fact which you must find."

If the County Attorney had terminated his rebuttal argument with the first quoted paragraph, there could be no objection.

---

1. "Q. [on *direct* examination] And did they tell you . . . who stole the car?
A. Yes, sir.
Q. What did they say?
A. They did, sir."

"Q. [on *cross* examination] Is that what they were telling you, they were *charged* with having stolen a car and a checkwriter?
A. You might as well say that, sir."
(Emphasis supplied.)

However, his use of the final four sentences raises the serious question of whether an impermissible reference was made to the fact that the appellant, by not becoming a witness, had exercised the privilege guaranteed him by the Fifth Amendment of the United States Constitution and secured to a defendant in Maine by Article 1 § 6 of the Maine Constitution,[2] as implemented in 15 M.R.S.A. § 1315.[3] If we decide the County Attorney used constitutionally impermissible language, we must also determine if such use constituted harmless error.

Since in his charge the presiding Justice made clear the rights of the appellant and the duty of the jury to disregard his election not to be a witness, we might conclude that the issue here was settled by the decision in State v. Mottram, 158 Me. 325, 184 A.2d 225 (1962). *Mottram* would appear to hold that an ambiguous comment by a county attorney could be rendered harmless through an appropriate jury instruction. However, this case was decided in 1962 prior to several decisions of the United States Supreme Court, which made applicable to the States more stringent rules on the enforcement of Fifth Amendment rights than were then recognized.

In 1964 Malloy v. Hogan, 378 U.S. 1, 10, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653, through the medium of the Fourteenth Amendment, made Fifth Amendment rights obligatory upon the States, to be enforced "according to the same standards that protect those personal rights against federal encroachment."

Following *Malloy*, the United States Supreme Court applied federal standards in striking down a California statute allowing comment on the failure of a criminal defendant to become a witness. It considered the statute to be "in substance a rule of evidence," adopted the holding of *Malloy* applying federal standards to state court proceedings, and concluded that

"the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).

*Malloy* and *Griffin* lead inevitably to the conclusion that, although both the Maine Constitution (art. 1, § 6) and the Statute (15 M.R.S.A. § 1315) provide a criminal defendant with the protection afforded by the Fifth Amendment, the *standards* by which this right is enforced must meet minimum federal criteria. We must, therefore, delineate within constitutionally acceptable limits a definition of the expression "impermissible comment." Having done this, our next task will be to determine, assuming a comment to be impermissible, the standards under which, if ever, it may be deemed harmless.

Initially, it is obvious that a direct, unambiguous and specific statement is prohibited. Such was the case in *Griffin, supra*, for example. Likewise, an argument that the "defendant sat in court, heard the testimony . . . and did not take the stand to deny it," was considered unjustified under the Maine Statute (now 15 M.

---

2. "Section 6. In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election;

 . . . . .

 . . . He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by judgment of his peers or the law of the land."

3. "In all criminal trials, the accused shall, at his own request but not otherwise, be a competent witness. . . . The fact that he does not testify in his own behalf shall not be taken as evidence of his guilt. The husband or wife of the accused is a competent witness."

R.S.A. § 1315), the intent of the Statute being to *"entirely exclude* from their [the juries'] consideration the fact that the defendant did not elect to testify . . . ." State v. Banks, 78 Me. 490, 492, 7 A. 269, 270 (1886)[4] (Emphasis supplied.)

Although speaking of instruction given a jury (not the comment of a county attorney), the Maine Court pointed out in State v. Shannon, 135 Me. 325, 329, 196 A. 636, 637–638 (1938), that a defendant is afforded "affirmative protection" by the Statute and, as a right, this must be stated to the jury in "unequivocal language." A fortiori, it seems to us, it becomes the affirmative duty of a prosecutor to refrain from the use of equivocal or ambiguous language in argument.

Language that "singles out" the defendant as the absent witness who might rebut the prosecution's evidence is constitutionally impermissible. *See* Thompson v. State, 41 Ala.App. 353, 132 So.2d 386 (1961). This, of course, is particularly true if the defendant is the only witness who could have contradicted the evidence. Desmond v. United States, 345 F.2d 225 (1st Cir. 1965).

■ We conclude, therefore, that precedent and the Maine Statute, as well as the Maine and United States Constitutions, prohibit either direct or equivocal prosecutorial comment on the defendant's failure to testify. Such a constitutionally impermissible comment will necessarily result in the granting of a mistrial unless under appropriate standards the comment can be deemed harmless error. It, therefore, becomes necessary to consider the standard by which harmless error in the context here under discussion may be judged.

In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) the Supreme Court held that all trial errors of constitutional dimension do not automati-

cally call for reversal, but the Court concluded that if there is a reasonable possibility that the error might have contributed to the conviction it could not be called harmless. *See* Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). *Chapman* placed the burden squarely on the prosecution to prove beyond a reasonable doubt the harmlessness of such a federal constitutional error.

The *Chapman* concept was later refined by adding a three pronged test by which harmless error could be determined. These tests, which we construe to be minimal constitutional standards now binding on the States, are:

1. Is the comment extensive?

2. Is the defendant's silence stressed to the jury as a basis of conviction?

3. Is there evidence that could have supported acquittal?

Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968).

Seven days after *Anderson* was decided the Supreme Court, in a Per Curiam opinion, ruled that when a state jury is asked to convict a defendant on circumstantial evidence, and a constitutionally impermissible comment is made in argument, such comment cannot be considered harmless unless it is shown beyond a reasonable doubt that it did not contribute to the resultant conviction. Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968).

We deem that the time has now come for Maine to formulate standards which we feel are constitutionally required and made obligatory upon us under the Fifth Amendment through the medium of the Fourteenth Amendment. These will guide the prosecutor and remove the trial judge from the ad hoc position he now occupies

---

4. State v. Banks has been cited with approval in State v. Landry, 85 Me. 95, 26 A. 998 (1892); State v. Shannon, 135 Me. 325, 196 A. 636 (1938); State v. Mottram, 158 Me. 325, 184 A.2d 225 (1962); State v. Gillis, 160 Me. 126, 199 A.2d 192 (1964); and State v. White, 285 A.2d 832 (Me.1972).

when faced with an objectionable comment. We adopt the following rule.

■ Impermissible prosecutorial comment can never be deemed harmless error as a matter of law under either of two circumstances:

1. A direct, non-ambiguous and unequivocal prosecutorial comment on the failure of a criminal defendant to become a witness.

2. An indirect prosecutorial comment which, without equivocation or ambiguity, suggests that a jury must accept as true the State's evidence because it is undenied by a criminal defendant as a witness.[5]

■ If a prosecutorial comment is made that falls into neither of the preceding classifications the State must demonstrate beyond a reasonable doubt, if the comment is to be deemed harmless, that the record contains no evidence, either direct or circumstantial, which would rationally support acquittal. Otherwise stated, it is only when it can be demonstrated beyond a reasonable doubt that the evidence in defense would not support acquittal by a rational and objective jury that ambiguous prosecutorial comment can be considered harmless error.[6]

We must now apply this rule to the facts before us.

Recalling that the State was unable, by any direct evidence, to place the appellant at Peterson's Auto Body Shop, or attribute to him any of the physical acts required to break, enter and commit larceny in this building through the observation of any witness, it is obvious that the case must be based upon circumstantial evidence, all flowing from the circumstance of his being found in possession of goods proved to have been stolen. State v. Poulin, *supra*. The appellant's possession of these goods was described by only one witness, namely, Linda Murray, thus placing in issue her veracity, since at least two defense witnesses testified otherwise. Additionally, there was evidence from which a jury could conclude, even though it might believe Mrs. Murray's testimony on possession, that other persons actually committed the crime charged and subsequently delivered the stolen checkwriter and automobile to the appellant and Mr. Eagan. A defense witness testified that he transported Tibbetts and Eagan to the business area in Skowhegan (some 3½ miles from the Peterson Auto Body Shop) and did not see them again until they returned to his trailer. However, he also testified that in the interim he gave one Ray Bickford and one Merton Goodridge a ride to "Lakewood," which would require going directly past the Peterson Auto Body Shop. When the appellant, Eagan and Mrs. Murray left in the stolen vehicle to get Miss Michaud, they took Merton Goodridge with them.

In deciding that a rational and objective jury could have returned a "not guilty" verdict, we can adopt the language of the presiding Justice when he ruled on motions for acquittal: "I think, Gentlemen, it is a square edged Jury issue."

How is the comment of the County Attorney to be classified?

While we do not construe the language of the County Attorney to be a direct and

---

5. We have not included the words "extensive" or "stressed," as suggested in *Anderson*, since we prefer to assume that either a direct comment or an unambiguous indirect comment should be thus construed. It is the import of the comment, not the number of words used, nor the emphasis with which they are spoken, that is determinative. The trial judge is thus relieved from making a subjective judgment of the impact of such comment on the minds of the jury.

6. See the dissenting opinion of Ely, J., in Wilson v. Anderson, 379 F.2d 330 (9th Cir. 1967), in which he commented that he "could not say, in any case wherein there is evidence . . . which might have supported acquittal, that the prosecutor's unconstitutional comments were 'harmless beyond a reasonable doubt.'" Anderson v. Nelson, *supra*, in reversing *Wilson*, ostensibly adopted this position.

unequivocal comment on the appellant's failure to become a witness, it could suggest to the jury that the silence of the appellant was an aid to the State's proof of the corpus delicti. The comment, in literal terms, focused directly on the "scene of [the] crime," and might have been understood by the jury to suggest that although this appellant would "know more about" what happened at the Peterson Auto Body Shop than "even the investigators," he still chose, by his silence, not to give the jury the benefit of this knowledge.

By adopting this analysis of the comment, and since no rational and objective jury could fail to find that the State had proved beyond *any* doubt the essential elements of breaking, entering and larceny *by some person*, we might, by applying the test adopted, conclude that the ambiguous comment was harmless beyond a reasonable doubt.

On the other hand, fairness requires us to read the words in the context in which they were used. The comment was made in rebuttal to the argument of appellant's counsel, which we have read carefully. This argument tacitly assumed that the State had proved the corpus delicti. It concentrated on attacking the veracity of both Keith and Linda Murray and stressed the failure of the State to produce several witnesses, including Rebecca Michaud, who were "in that trailer" and would have equivalent knowledge of the facts.[7]

It is completely plausible to assume that the jury related the County Attorney's comments, in the context of the argument, to the events occurring at the trailer. The comment could well convey this thought, recalling that the appellant had not been a witness: "And who, after all . . . [knew] what took place [in that trailer]? Probably those [who did the things that Linda Murray described,] if you find these two defendants did so do, [they] know more about it than anyone else. Even the investigators." In this sense, the inference that Linda Murray's testimony should be accepted because the appellant did not become a witness and deny it, is definitely suggested. Thus construed, the comment points at the Achilles tendon of the State's case, namely, the veracity of Linda Murray, upon whose testimony the State necessarily depends to place the appellant in possession of the stolen property. *See* State v. Saba, State v. Poulin, and State v. Gove, *supra*. We cannot disregard as harmless an argument which suggests that the proof of an essential element of the State's case is aided by the silence of the appellant. *See* United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970).

Our analysis leads to the conclusion that the language used by the County Attorney may fairly be construed as an ambiguous comment suggesting that the absence of the appellant as a witness aided the State in establishing the identity of the

7. "Who would have known what went on in the trailer except the people who were in that trailer that night? Most of them, anyway, probably one or two friends, so these are the only people available, and out of them, the State sought to pick one, Linda Murray, to testify as to the events that took place in that trailer, and subsequently to indicate what happened.

Now I am more impressed by who the State didn't put on than by who the State put on. Out of all the witnesses that could have been called as to what went on in that trailer, and the State certainly, when we are talking about investigating a case and having police officers and detectives and State Police Officers and detectives, some of who testified here, the State has at its disposal all of the investigative and the resources available to it to investigate a criminal matter, and out of all of the people who were in that trailer and who knew what went on in that trailer and the people who knew what went on subsequently, because the group left together, the State sought to put one woman on the stand, Linda Murray . . . .

. . . Where was Rebecca Michaud's testimony? And where was the testimony of all of the other people who were in that trailer, who knew something about what went on in that trailer, and whether or not a checkwriter was brought in or not? The State selected one."

person criminally responsible for the crime charged. Since there was a rational basis for a verdict of acquittal on the failure of the State to prove this identity, constitutional error was committed which mandates the granting of a new trial. The Justice below was in error when he failed to grant the appellant's motion for a mistrial.[8]

### Point 6

We detect no error in the instructions of the Justice below to the jury, but because a new trial must be had in this case, no useful purpose would be served in any analysis of the instructions.

The entry is:

Appeal sustained. New trial ordered.

POMEROY, J., did not sit.

---

8. The appellant acted seasonably to protect this point on appeal. Although objection was not entered at the conclusion of the comment in the presence of the jury, counsel did immediately and in chambers make known to the Court his position and moved for a mistrial. We can readily understand why counsel might be reluctant to make an overt objection in the presence of the jury, which might well serve to emphasize the argument of the County Attorney.