**Alan Lloyd LUSSIER, Petitioner, Appellant,**

v.

**Frank O. GUNTER et al., Respondents, Appellees.**

**No. 76–1282.**

United States Court of Appeals, First Circuit.

Argued Sept. 15, 1976.

Decided March 31, 1977.

---

Richard S. Goldstein, Boston, Mass., for appellant.

Deborah S. Solomon, Asst. Atty. Gen., Boston, Mass., with whom Francis X Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, CLARK, Associate Justice,* (Retired), CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The district court dismissed appellant Lussier's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and he appeals.

Lussier was convicted after a jury trial in Massachusetts Superior Court of first degree murder committed with extreme cruelty or atrocity and was sentenced to life imprisonment. The Commonwealth introduced evidence that in 1971, at the time of the murder, Lussier was a part-time resident superintendent at an apartment building on Westland Avenue, Boston. Late in the evening of October 30 he arrived at a Halloween party in the building which was attended by the victim, a 19-year-old student nurse, and scores of other persons. While Lussier was there a fight broke out between one Devereaux and others. The testimony was conflicting as to the amount which Devereaux bled and petitioner's proximity to him. The defense contended that the type O positive blood which was later found caked in small amounts on Lussier's boot and clothing had originated with Devereaux.

There was evidence that Lussier conversed with the victim and several others for about one half hour. Two participants in this conversation testified that they later saw petitioner and the victim leaving the apartment hand in hand. About eighteen hours after the couple had left the party, the victim's badly battered, nude body was found in a vacant apartment in the same building. A downstairs neighbor's testimony recalling sounds of a struggle and a loud thud emanating from the vacant apartment at about 2:30 a. m. on the night of the party tended to show that the murder occurred no

---

* Of the U.S. Supreme Court, sitting by designation.

later than one half hour after petitioner was observed leaving the party with the victim. The wounds about the victim's head were consistent with those which might have been inflicted by repeated kicks with boots such as those worn by petitioner. The victim's blood was of type O positive, the same type as that found on petitioner's boot. There was testimony indicating that petitioner had been aware that the apartment was vacant, he having assisted in cleaning it on the day before the party.

The prosecutor's closing statement to the jury included a number of comments the propriety of which Lussier has since challenged. The comment which Lussier focuses upon here, and which he argues entitles him to issuance of a writ of habeas corpus as in violation of his privilege against self incrimination, is the following:

"Maybe he told her, there was a party down there. I don't know how he got her down there. *There's only one person that could tell us that.* But, in any event, she went with him." [Emphasis supplied.]

Lussier's attorney, who does not now represent him, did not object or request a curative instruction from the court. The court's lengthy jury instructions included, however, the following:

"The third fundamental proposition is the following—and I am referring to that portion of the statute which is General Laws, c. 233, § 20, Part Third. While the defendant in this case did not testify, I told you that under the law he is presumed to be innocent.

"And, again, it's found in G.L., Ter. Ed. c. 233, § 20, Part Third, and I am quoting: 'the defendant in the trial of an indictment, complaint, or other criminal proceedings shall at his own request but not otherwise be allowed to testify, but his neglect or refusal to testify shall not create any presumption against him.'

"Our Supreme Judicial Court has interpreted that section of the statute and it has said time and time again that this is a privilege of the defendant which is guarded zealously by the courts. And his decision not to testify at the trial is a matter that cannot tend to incriminate him or create in the mind of the fact-finding tribunal, you the jury, in this case, any unfavorable circumstance and no unfavorable inferences can be drawn against him for his failure to so testify.

"The logic for this is simple, because under the law the Commonwealth has the burden of proof to prove guilt of the defendant when it charges him with an offense. That means that it must establish each and every element of the crime with which he is charged and to prove it beyond a reasonable doubt. The defendant is not obliged to prove that he is innocent.

"He is not obliged to assist in any way or to do anything when he is charged with an offense. He can remain absolutely mute. The Commonwealth's burden is to prove that he committed the offense charged. And he does not have to prove that he did not commit it.

"As a matter of fact and as a matter of law, he has no obligations at all to disprove that which the Commonwealth alleges."

On appeal to the Massachusetts Supreme Judicial Court, Lussier argued that the prosecutor's comments were "improper and [he] challenge[d] the failure of the trial judge to order the remarks struck when they were made or to subsequently instruct the jury to disregard them." *Commonwealth v. Lussier*, 364 Mass. 414, 424, 305 N.E.2d 499, 505 (1973). The court ruled:

"While we do not approve of some portions of the prosecutor's summation to the jury, when viewed in the overall context they are not so prejudicial as to justify reversal. . . . Moreover, there is a simple and obvious reason for the trial judge's alleged 'failure' to strike them or attempt to mitigate their impact as effectively as the defendant now argues was appropriate. That is, defense counsel took no exceptions at the close of the prosecutor's summation, and made no request for special instructions despite ample opportunity to do so . . . . While under G.L. c. 278, § 33E, we will, in

appropriate circumstances, act to rectify a substantial risk of a miscarriage of justice, despite the absence of exceptions in the record, we do not feel that such action is warranted here." *Id.* at 424–25, 305 N.E.2d at 506.

In a footnote the Supreme Judicial Court quoted the prosecutor's remarks which were asserted to be prejudicial. With reference to the comment that "[t]here's only one person that could tell us that," the court stated:

"This last remark would raise serious questions as to the infringement of the defendant's Fifth Amendment right to remain silent, see *Griffin v. California*, 380 U.S. 609, 611, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), were it not for that portion of the judge's charge specifically explaining to the jury that the defendant had the right not to testify, and that no unfavorable inferences were to be drawn from his exercising that right." *Id.* at 424 n. 3, 305 N.E.2d at 506 n. 3.

In the district court the Commonwealth resisted the habeas corpus petition on grounds that Lussier had waived objection to constitutional errors in failing to take exception to the prosecutor's comment. According to this argument, Massachusetts' statutory "miscarriage of justice" exception to a waiver is the equivalent of the federal "plain error" rule, Fed.R.Crim.P. 52(b). The Commonwealth also argued that the prosecutor's comment was harmless in light of the trial judge's extensive instructions on the defendant's right to remain silent. The district court denied the petition.

On appeal, Lussier presses the argument that the prosecutor's remark was an unconstitutional and harmful comment on an accused's exercise of the right to remain silent. He contends that his attorney's failure to except was not a "deliberate bypass" of state court procedure, *see Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), for the prosecutor's misconduct had put him in the position of making a "grisly choice" between suffering the comment in silence and objecting, thereby calling further attention to the prejudicial remark. He denies that a calculated tactical decision to forego objection was ever made. *Id.* at 439, 83 S.Ct. 822. Furthermore, Lussier argues, the Supreme Judicial Court actually reached the constitutional issue, so the Commonwealth's reliance on a theory of waiver is inapposite.

■ We need not decide whether or to what extent *Fay's* "deliberate by-pass" standard has been broadened by the Supreme Court in giving effect to state rules concerning waiver. *See Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); P. Bator, et al., Hart & Wechsler's The Federal Courts and The Federal System 256–58 (Supp.1977). We agree with petitioner that the Supreme Judicial Court decided the substance of his constitutional claim. It characterized the prosecutor's offensive comments as "not so prejudicial as to justify reversal." *Id.*, 364 Mass. at 424, 305 N.E.2d at 506. The comment that is the subject of this appeal was said to "raise serious questions as to the infringement of the defendant's Fifth Amendment right to remain silent . . . were it not for that portion of the judge's charge specifically explaining that the defendant had the right not to testify, and that no unfavorable inferences were to be drawn from his exercising that right." 364 Mass. at 424 n. 3, 305 N.E.2d at 506 n. 3. While it also stressed the lack of exceptions and requests for special instructions, we are satisfied that the court reached and decided the merits of the constitutional issue presented in this appeal. We are therefore free to consider it. *Warden v. Hayden*, 387 U.S. 294, 297 n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

In *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965) the Supreme Court held that "the Fifth Amendment, . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." In determining whether Lussier's fifth amendment rights were infringed we must therefore inquire whether

the prosecutor's statement was a "comment . . . on the accused's silence." The tenth circuit has formulated the following test:

"[W]hether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955).[1]

The comment in this case came after the prosecutor had speculated about how Lussier might have lured the victim to the vacant apartment:

"I don't know how he got her down there. There's only one person that could tell us that."

It is not entirely clear who the "one person" was supposed to be. Either the prosecutor was rhetorically invoking the victim ("there's only one person that could tell us that and she no longer can"), or else he was pointing his finger at the silent Lussier. *Cf. Rodriguez-Sandoval v. United States,* 409 F.2d 529, 531 (1st Cir. 1969); *Desmond v. United States,* 345 F.2d 225, 227 (1st Cir. 1965). We cannot quite say, in the words of the tenth circuit, that the remark was "manifestly intended or was of such character that the jury would naturally and necessarily take it" as a comment on Lussier's failure to testify.

Even, however, if the comment were interpreted as coming within the class of prosecutorial comment which the fifth amendment forbids, we believe that the Superior Court justice's lengthy instruction to the jury on a defendant's right not to take the stand rendered the improper remark "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). While the judge did not immediately interrupt argument to admonish the prosecutor and instruct the jury,[2] his instruction at the conclusion of the trial on Lussier's right to remain silent was unusually emphatic and complete. It far exceeded the more perfunctory general instructions which have often been found inadequate to combat specifically prejudicial remarks. The prosecutor's comment was itself brief, indirect and isolated. It plainly could and preferably should have been dealt with by an immediate, *sua sponte* instruction. But given the thoroughness of the later instructions, we think that whatever prejudicial impact the comment had in heightening the jury's awareness of defendant's failure to take the stand was adequately offset. *See United States v. Biondo,* 483 F.2d 635, 645 (8th Cir. 1973), *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); *United States v. Mahanna,* 461 F.2d 1110, 1114–15 (8th Cir. 1972); *United States v. Alloway,* 397 F.2d 105, 113 (6th Cir. 1968); *Jacobs v. United States,* 395 F.2d 469, 477–78 (8th Cir. 1968). *Cf. United States v. Schartner,* 426 F.2d 470, 478 (3d Cir. 1970); *United States v. White,* 444 F.2d 1274, 1278 (5th Cir.), *cert. denied,* 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971). *But see Berryman v. Colbert,* 538 F.2d 1247, 1249–50 (6th Cir.

---

1. *Accord, United States v. Williams,* 172 U.S. App.D.C. 290, 521 F.2d 950, 953 (1975); *United States v. Aldridge,* 484 F.2d 655, 660 (7th Cir. 1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1423, 39 L.Ed.2d 477 (1974); *United States v. Biondo,* 483 F.2d 635, 644 (8th Cir. 1973); *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); *Doty v. United States,* 416 F.2d 887, 890 (10th Cir. 1968), *vacated on other grounds,* 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542 (1971).

2. Petitioner notes that this circuit, in *United States v. Flannery,* 451 F.2d 880, 882 (1 Cir. 1971), announced that in future cases we would reverse a conviction where after a prosecutorial comment on a defendant's silence, the trial judge did not immediately and *sua sponte* interrupt the argument to admonish the prosecutor and instruct the jury. The *Flannery* rule, as petitioner concedes, rests on our supervisory powers over the federal courts within this circuit. It was not addressed to the state judiciary, and insofar as it might require actions in some cases going beyond the strict requirements of the Constitution, we shall not apply it in *habeas* review of state proceedings. This is not to say that the immediacy and force of a state judge's corrective actions will not be important in determining whether the prejudice from an unconstitutional comment has been neutralized.

1976); *United States v. Handman*, 447 F.2d 853, 855 (7th Cir. 1971).

*Affirmed.*