STATE of Maine

v.

Harley LIBBY and Stephen Yates.

Supreme Judicial Court of Maine.

Feb. 5, 1980.

John McElwee, Dist. Atty., Alan F. Harding (orally), Asst. Dist. Atty., Houlton, for plaintiff.

Severson & Hand, Daniel R. Nelson (orally), Houlton, for defendant.

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, GLASSMAN and WER-NICK, JJ.

GLASSMAN, Justice.

Following a consolidated jury trial in the Superior Court, Aroostook County, each defendant was convicted of one count of arson in violation of 17–A M.R.S.A. § 802(1)(A) and one count of criminal mischief in violation of 17–A M.R.S.A. § 806(1)(A). Both defendants appealed, contending that the attorney for the State improperly commented on their failure to testify. We set aside the judgments.

During his final argument to the jury, the attorney for the State made the following statement:

Now, the State does have the burden of proof, and we have proved that Harley Libby's gun was down at that camp. While the defendants don't have to prove anything at all, I think you are entitled to hear from them, or at least Mr. Libby's counsel, how that could occur. What was the gun doing down there? What's the explanation for it being there? The obvious explanation is that Mr. Libby took it down there and used it to shoot up the truck. The same gun that he used to shoot into a camp and later on burn[ed] down. If there is another explanation for it, I would be interested in hearing it.

The United States Constitution,[1] the Maine Constitution[2] and the Maine statutes[3] guarantee that a defendant may decline to testify in a criminal proceeding. The United States Supreme Court has held that the fifth amendment to the federal Constitution, applicable to the states through the fourteenth amendment, prohibits comment by a prosecutor on a defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). The constitutional privilege against self-incrimination holds a special place in the public policy and jurisprudence of the State of Maine. *State v. Collins,* Me., 297 A.2d 620, 626 (1972). Against

this background, in *State v. Tibbetts,* Me., 299 A.2d 883, 888 (1973), this Court held that precedent and the Maine Statute, as well as the Maine and United States Constitutions, prohibit either direct or equivocal prosecutorial comment on the defendant's failure to testify. Such a constitutionally impermissible comment will necessarily result in the granting of a mistrial unless under appropriate standards the comment can be deemed harmless error.

We then concluded that in two situations prosecutorial comment, as a matter of law, can never be deemed harmless:

1. A direct, non-ambiguous and unequivocal prosecutorial comment on the failure of a criminal defendant to become a witness.

2. An indirect prosecutorial comment which, without equivocation or ambiguity, suggests that a jury must accept as true the State's evidence because it is undenied by a criminal defendant as a witness.

*Id.* at 889.

Defendants concede that the statement here involved does not fall within the first category enumerated above. Nevertheless, the prosecutor's statement was an indirect comment on the failure of the defendants to testify. Rather than a specific reference to the lack of testimony by the defendants, the prosecutor's statement, "I think you are entitled to hear from them," indirectly drew the jury's attention to the absence of testimony by the defendants. The suggestion as to the use the jury might make of this absence of testimony becomes clear upon examination of the entire argument and the incomplete record which we have before us. Apparently, the primary evidence identifying the defendants as the perpetrators of the crimes charged was the testimony of Brian Donahue. He claimed to be a participant in the crimes and identi-

---

1. U.S.Const. amend. V.

2. Me.Const. art. I, § 6.

3. 15 M.R.S.A. § 1315 provides in pertinent part:

In all criminal trials, the accused shall, at his own request but not otherwise, be a competent witness. . . . The fact that he does not testify in his own behalf shall not be taken as evidence of his guilt.

fied the two defendants as other participants. Donahue described the defendant Libby as using a .22 during the course of committing these crimes. From the prosecutor's argument it appears that expended .22 caliber cartridge cases were found at the scene of the crime. A firearms expert identified these cartridge cases as having been fired from a gun owned by the defendant Libby. The unmistakable point of the prosecutor's argument was that if Libby or Yates did not explain how Libby's gun happened to be at the scene of the crime the jury must accept the only explanation offered—the testimony of the accomplice that Libby and Yates were participants in the crimes. Thus, the indirect comment suggested "without equivocation or ambiguity" that the jury must accept the State's evidence as true because it was undenied by Libby and Yates.[4]

■ In *State v. White,* Me., 285 A.2d 832, 836 (1972), we held that a presiding Justice must instruct the jury that a defendant's failure to testify shall not be considered as evidence of his guilt unless the defendant specifically requests that the court make no reference to his failure to testify. This holding recognized that a defendant, as a tactical judgment, may conclude that any reference in the court's instructions to his failure to testify might unnecessarily direct the jury's attention to that fact to his prejudice. To avoid prejudice, therefore, the defendant may request that such instruction not be given. In the instant case, the colloquy between court and counsel reveals that the defendants had made a tactical judgment that they wanted no judicial reference to their failure to testify and had specifically made such a request of the court. Following the prosecutor's impermissible comment, at the suggestion of the presiding Justice and without waiving their

objection to the comment, the defendants changed their tactics and requested that the presiding Justice charge the jury on the right of the defendants to decline to testify. Thus, the prosecutor's argument not only violated the standards enunciated in *State v. Tibbetts, supra,* but also deprived the defendants of the tactical advantage of having no reference made to their failure to testify in the court's charge to the jury.

■ Because the impermissible comment of the prosecutor is, under *Tibbetts,* prejudicial error as a matter of law, we set aside the judgments of conviction.

The entry is:

Appeals sustained.

Judgments of conviction set aside.

Remanded to the Superior Court.

POMEROY and ARCHIBALD, JJ., did not sit.

McKUSICK, Chief Justice, with whom WERNICK, Justice, joins, dissenting.

The appellants' convictions for arson and criminal mischief resulted from their participation with four other men in burning and shooting up a woods camp used by Canadian woodsmen in Township 7, Range 5, in Aroostook County. The appellants Libby and Yates were tried for the escapade jointly with two of the other participants; the final two participants testified for the State at trial. One of the co-defendants changed his plea to guilty during the trial, and another who was found guilty jointly with these appellants has not appealed.

Only a small part of the transcript of the appellants' four-day trial is before the Law Court for review. The appellants seek a new trial exclusively upon the single claim that one paragraph of the prosecutor's closing argument violated their fifth amendment right not to testify. They further

4. Although not directly relevant, we feel constrained to note the discussion between court and counsel during the argument on the defendants' motion for mistrial since it reveals the prosecutor's attitude and the presiding Justice's remarkable *restraint.*

    Court: Mr. State's Attorney do you have anything to say on that?

    [Prosecutor]: Bah.
    Court: What was that?
    [Prosecutor]: My comment was bah.
    Court: That's not a very dignified answer, Mr. . . . . .

contend that the violation was such as to necessitate reversal of their convictions even if the prosecutorial comment was harmless error. Since we do not read the prosecutor's statement to have been "without equivocation or ambiguity," as do our colleagues, this case is in our view an inappropriate occasion to apply the *per se* rule of *State v. Tibbetts,* Me., 299 A.2d 883 (1973).

In *Tibbetts* this court laid down the rule that prosecutorial comment constitutes *per se* reversible error under either of two circumstances:

    1. A direct, non-ambiguous and unequivocal prosecutorial comment on the failure of a criminal defendant to become a witness.

    2. An indirect prosecutorial comment which, without equivocation or ambiguity, suggests that a jury must accept as true the State's evidence because it is undenied by a criminal defendant as a witness.

*Id.* at 889. *Tibbetts* also recognized that a prosecutorial comment that does not fall into either of those *per se* categories—*i. e.,* a comment that is *not* nonambiguous and unequivocal—will be deemed harmless error "only when it can be demonstrated [by the State] beyond a reasonable doubt that the evidence in defense would not support acquittal by a rational and objective jury." *Id.* This court in *Tibbetts* found that the comment there was ambiguous,[1] and therefore did not fall into either *per se* category. After an examination of the whole record, which included testimony by two defense witnesses whose testimony directly contradicted that of the single State's witness identifying the defendant Tibbetts as being in possession of recently stolen goods, we concluded that

there was a rational basis for a verdict of acquittal on the failure of the State to prove this identity, [and therefore] constitutional error was committed which mandates the granting of a new trial.

*Id.* at 891.

On appeal in the case now at bar, defendants' joint brief explicitly concedes, as it must, that in order for their appeal to be sustained they must convince the Law Court that the statement made by the attorney for the State at trial was not an ambiguous statement, but one falling into the second *per se* category of *Tibbetts.* They thus concede that the prosecutorial comment was not a direct one falling into the first *Tibbetts* category; and further concede that if the comment was ambiguous, that is, if it fell into the third *Tibbetts* category, the error was harmless. At trial, defense counsel presented no witnesses to rebut any of the elements of the crime established by the State. On appeal, defense counsel have brought up for our review only a small part of the total record; the transcript before us contains the testimony of only one of the State's witnesses at the four-day trial and does not contain any of the presiding justice's charge.[2] We do not have any way of knowing whether the justice instructed the jury in the manner discussed in his prior colloquy with counsel, nor whether defense counsel indicated satisfaction with his charge. This appellate court is thus in no position to review the entire record to determine whether any statement falling into the third *Tibbetts* category was or was not harmless error. *See State v. Gagnon,* Me., 383 A.2d 25, 28 (1978).

Appellants' whole case on appeal comes down then to their contention that the pros-

---

1. In the *Tibbetts* trial for breaking, entering and larceny in the nighttime, the prosecutorial comment (which should be compared with the statement in the case at bar) was the following:

    [I]f . . . [defense counsel has] any questions as to why certain witnesses weren't here, it's his own fault, because he could have gotten them here as well as we.

    And who, after all, Ladies and Gentlemen, knows what takes place at the scene of a crime? Probably those that have committed

the crime, if you find that these two defendants did so do, know more about it than anyone else.

*State v. Tibbetts, supra* at 886.

2. For the importance of the judge's charge in deciding the "harmless error" issue on an ambiguous comment, *see Lussier v. Gunter,* 552 F.2d 385 (1st Cir.), *cert. denied,* 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977).

ecutor's comment, although indirect, suggested "without equivocation or ambiguity . . . that [the] jury must accept as true the State's evidence because it is undenied by [one or more of the] defendant[s] as a witness." In other words, the sole question is whether the prosecutor committed *per se* reversible error of the second *Tibbetts* variety.

We believe the prosecutor's comment cannot fairly be read to be "without equivocation or ambiguity." The offending comment in *Tibbetts,* see n. 1 above, which this court found was ambiguous (299 A.2d at 889–90), was far more pointed than the controverted paragraph in the State's closing argument in the case at bar:

Now, the State does have the burden of proof, and we have proved that Harley Libby's gun was down at that camp. While the defendants don't have to prove anything at all, I think you are entitled to hear from them, or at least Mr. Libby's counsel, how that could occur. What was the gun doing down there? What's the explanation for it being there? The obvious explanation is that Mr. Libby took it down there and used it to shoot up the truck. The same gun that he used to shoot into a camp and later on burn down. If there is another explanation for it, I would be interested in hearing it.

In the whole context it appears to us that the prosecutor was quite likely referring to the three defense attorneys and their upcoming closing argument, and not to their clients and their prior failure to testify. At the outset of his argument to the jury, the prosecutor had explained that he was making the first closing argument and that the three "defense counsels" would speak after him. As he put it: "The purpose of that is that they have an opportunity to answer me in their arguments and the idea [of my having the final argument] is to give me an opportunity to answer them." Thus, the "them" in the earlier reference had meant defense counsel and not the defendants.

After the closing arguments and after the jury had retired from the courtroom, one of three separate attorneys for the three defendants being tried together argued that that particular statement was prejudicial and improper, and moved for a mistrial, and the other defense counsel joined in the motion. The court reporter read back that portion of the prosecutor's summation, and then the lead defense counsel made the following comment, which strongly indicates that even he on rehearing the prosecutor's statement interpreted it to refer only to defense counsel:

[Defense Counsel]: Your Honor, I think the references that you are entitled to hear from *them, Defense Counsel or at least Mr. Libby's counsel* and at the end of that I would like to hear the explanation, that suggests very strongly that the Defendants ought to have taken the stand.

(Emphasis added) The prosecutor then immediately apologized to the court for "my undignified reaction to the motion made which I took as an attack on my integrity and that's why I reacted the way I did." [3] Then the presiding justice made his entire statement in regard to the interpretation of the prosecutor's comment in the context and manner in which it was made:

COURT: First of all I will say that I don't know what prompted that part of the argument. There is no direct reference to any particular defendant. It is my judgment per se, that it is not a violation of the Defendants or remarks to the effect that why hadn't the Defendants testified. So I would deny the motion.

In a somewhat inarticulate way the presiding justice was saying that the word "them" in the prosecutor's argument to the jury referred to the three "defense counsels" and not to any particular defendant. That interpretation, which is supported by the prosecutor's specific reference to "at

---

3. We do not in any way condone the prosecutor's one-syllable reaction to defendants' motion for a mistrial. *See* n. 4 of the majority opinion. However, he promptly apologized

and, if the attitude reflected by his reaction had any significance in interpreting his comment to the jury, we are confident the presiding justice gave it proper weight.

least Mr. Libby's counsel," should be respected by the Law Court in view of the presiding justice's opportunity to observe whatever gestures and voice intonations accompanied the statement.

A challenge to defense counsel to offer an explanation of the presence of Harley Libby's gun at the site of the crime is not impermissible. *See Hollbrook v. United States,* 441 F.2d 371, 373 (6th Cir. 1971). At the very least the prosecutorial comment—on the basis of an appellate court's reading of the printed page—fairly lends itself to that possible interpretation. And the participants at trial apparently interpreted the comment to challenge defense counsel to provide an explanation in their closing arguments, and not to suggest that the jury *must* accept as true the State's evidence because the defendants did not testify. *Cf. State v. Inman,* Me., 350 A.2d 582, 592–95 (1976) (prosecutor's reference on no less than 26 occasions to State's evidence as being "uncontroverted," held to be at worst ambiguous).

We thus are strongly inclined to read the prosecutor's comment as merely a challenge to the three defense counsel to come up in their argument to the jury with an innocent explanation of the State's evidence. Even if we are not completely right in that reading, ours is plainly a reasonable interpretation. Under such circumstances the prosecutorial comment can hardly be said to be nonambiguous and unequivocal, as it must be to trigger either of the *Tibbetts per se* rules.

In searching for the meaning of "nonambiguous and unequivocal" in the *Tibbetts* rule, we find helpful the formulation used by the federal courts in determining whether a prosecutorial comment is violative of the defendant's fifth amendment rights.

The First Circuit has recently stated the test as follows:

"[W]hether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Lussier v. Gunter,* 552 F.2d 385, 389 (1st Cir.), cert. denied, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977), *quoting Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955).

*Borodine v. Douzanis,* 592 F.2d 1202, 1210 (1st Cir. 1979). We understand the *Tibbetts* "nonambiguous and unequivocal" standard to impose the same test for application of a *per se* rule. To constitute *per se* reversible error the prosecutor's statement must have been "manifestly intended,"[4] or "of such a character that the jury would naturally and necessarily take it," to be a comment on the defendant's failure to testify. The fact that the constitutionally impermissible interpretation is merely one of several possible interpretations of the prosecutor's comment is not adequate under the *Tibbetts* rule.[5]

Traditionally, the decision upon a motion for a mistrial lies within the sound discretion of the trial judge, and his ruling "will not be disturbed absent a clear showing by the appellant of abuse of that discretion." *State v. Prudenzano,* Me., 365 A.2d 418, 420 (1976). Here, appellants assert the second *Tibbetts per se* ground for a mistrial as a matter of law; and if the prosecutor's comment were indeed nonambiguous and unequivocal, thus bringing it within the *Tibbetts* second category, we would accord no deference at all to the trial justice's judgment. Here, however, the critical question is whether, in the context and manner in

---

4. We assume that the "manifest intent" standard does not create a subjective test of the prosecutor's intent. Rather, the trial court examines intent as it is objectively manifested by the words themselves and the context in which they were spoken by the prosecutor.

5. In *Tibbetts,* by requiring a nonambiguous and unequivocal comment, the Maine court rejected the *per se* test applied in some other states:

that where there is a possibility that a prosecutor's comment could be understood by the jury as reference to failure of defendant to testify,

reversible error has occurred that cannot be avoided by the harmless error rule. *Beecher v. State,* 294 Ala. 674, 320 So.2d 727, 734 (1975); *see also Childers v. State,* 277 So.2d 594, 595 (Fla.App.1973).

which it was delivered, the prosecutor's comment did in fact unambiguously and unequivocally suggest that the jury *must* accept the inferences to be drawn from the presence of Harley Libby's gun at the site of the crime because Libby and his co-defendants had not taken the stand and denied those inferences. That critical question involves whether "the jury would naturally and necessarily take" the prosecutor's argument to refer to defendants' exercise of their right not to testify. No one—least of all an appellate court—is in a better and more objective position to answer that question than the justice who presided at trial. *See State v. Mitchell,* Me., 402 A.2d 479, 482 (1979). By his succinct ruling in the case at bar the presiding justice found as a fact that the prosecutor was not referring to the lack of testimony by the defendants. In absence of clear error we ought to accord respect to that determination. *Cf. State v. McLain,* Me., 367 A.2d 213, 217–18 (1976) (findings of fact on suppression motion). At the very least it makes us unwilling to hold, as a matter of law on the cold record (and only part of even that), that the comment is so nonambiguous and unequivocal as to require a *per se* reversal.

Our unwillingness to reverse the convictions of these defendants should not be taken as approval of a prosecutorial comment such as that in issue here. A prosecutor in using argument that stands a chance of being misunderstood by the jury as a comment on the defendant's failure to testify is risking damage to the spirit if not the letter of the defendant's fifth amendment rights. That, he is obligated to avoid as a public officer of the law. Moreover, such argument does not make practical sense. By it, the prosecutor unnecessarily risks loss of an otherwise solid conviction, because in future appeals the full record will usually be before the Law Court so that even an ambiguous comment will under *Tibbetts* be the basis for reversal if the State cannot demonstrate beyond a reasonable doubt that it was harmless error.

We do not find in the limited record brought up on this appeal any basis for setting aside these convictions.