**STATE of Maine**

v.

**Robert C. TURNER.**

Supreme Judicial Court of Maine.

Argued May 7, 1981.

Decided Aug. 10, 1981.

James R. Erwin (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Dunlap & O'Brien, Mark E. Dunlap (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

GODFREY, Justice.

After a jury trial in Superior Court, Cumberland County, defendant Robert C. Turn-

er was convicted of manslaughter[1] and of leaving the scene of a vehicle accident.[2] He appeals from the judgments of conviction on various grounds, among them that certain remarks the prosecutor made during his opening statement to the jury had the effect of impugning Turner's decision not to take the stand and thereby violated his constitutional privilege against self-incrimination. We vacate the judgments of conviction and remand for further proceedings.

At trial evidence was presented which, if believed, would have tended to establish the following facts: At about midnight on July 7, 1979, William Roy and Kenneth Yunker were riding their bicycles southward in the breakdown lane of U. S. Route 1 (south) in Yarmouth, Maine. The two were traveling down a slope toward a bridge over the Royal River. The breakdown lane narrows as the highway crosses the bridge. Although the night was clear, the road over the bridge was not lighted.

As the boys approached the bridge they heard the sound of an automobile overtaking them. While they were cycling across the bridge, Kenneth Yunker heard the sound of an impact and saw a green AMC Hornet automobile pass him going southward. He did not observe the collision itself and was unable to see the driver of the automobile. Glancing backward to ascertain what had happened, Yunker saw Roy's bicycle lying in the road on the bridge but saw nothing of Roy himself. Roy's body was eventually found in the river. Physical evidence suggested the possibility that the automobile had struck Roy's bicycle at an angle when the bicycle was at least a foot inside the traveling lane of the highway.

About one hour after the accident a Portland police officer noticed a green AMC Hornet that had suffered damage indicating that it had been involved in a collision. When the officer stopped the automobile he discovered that the driver was defendant Turner. No other person was present in the automobile. Later investigation by the police developed evidence tending to show that some person had opened and closed the front door on the passenger's side after the accident but before the Portland police officer stopped the automobile.

According to the police reports, when Turner was questioned by the police about his activities on the night of the collision, he stated that early in the evening he had been at the house of one Byron Taylor in Falmouth, Maine; that he and Taylor had left the house in Taylor's green AMC Hornet with Taylor driving; that sometime later the two had stopped at a fast-food restaurant in Falmouth; that Taylor had then left the automobile, given Turner the keys, and directed him to drive north to Route 88, then to U.S. Route 1 in Yarmouth, and finally to Interstate 95. However, according to the police, Turner claimed that he never went even as far as Route 88. A stranger to the area, Turner had not been sure exactly where he drove that night but did not remember being involved in a collision while he was driving the automobile.

Byron Taylor stated that on the night of the collision he had "blacked out" from excessive drinking and that he could not remember anything that happened before he lost consciousness. However, when he regained consciousness in Portland he hitchhiked home to Falmouth rather than seek

---

1.  17–A M.R.S.A. § 203 (1980) provides, in pertinent part:
    1. A person is guilty of manslaughter if he:
    A. Recklessly, or with criminal negligence, causes the death of another human being
    . . . .

2.  29 M.R.S.A. § 893 (1978) provides:
    The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible, but shall then forthwith return to

the scene. The driver shall remain at the scene of the accident until he has given his name, address and the registration number of the vehicle he is driving, and shall, upon request and if available, exhibit his operator's license to the person struck or the driver or occupant of any vehicle collided with, and shall render to any person injured in the accident reasonable assistance.

A violation of this section is a Class D crime.

his family's assistance. When Falmouth police happened to stop the car in which he was riding, he appeared to be unusually nervous and frightened. After Taylor left that car and was nearing his home on foot, he jumped behind a tree at the approach of a police car. Police interrogators found him to be evasive in responding to their questions.

Turner was arrested and later indicted for manslaughter and for leaving the scene of a vehicle accident. The case came to trial in Superior Court on July 21, 1980. During his opening statement to the jury, counsel for the State made the following remarks:

> [Turner] will tell you that he parted company with Taylor at the restaurant and he claims that it was just shortly thereafter that the Portland police stopped him.... He insists that there was no accident when he was driving. After they left the restaurant though Turner says that he was alone in the car.... The defendant will surely try to raise doubts in your mind as to who was driving that vehicle when it struck William Roy.

Shortly before he made those remarks the prosecutor had announced that "Kenneth Yunker is here today and he will testify as to what he saw or heard." Turner never testified at trial. The jury found him guilty on both counts.

On appeal Turner contends that the prosecutor's statements violated his privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and Article I, Section 6 of the Maine Constitution. Turner regards the prosecutor's comments as indirect but unmistakable references to his impending failure to take the witness stand, asserting that the prosecutor's remarks challenged him to become a witness in his own defense and suggested to the jury that they must accept the State's evidence as true if the defendant did not personally rebut it. Turner argues that those remarks were prejudicial as a matter of law and mandated declaration of a mistrial.

In contrast, the State characterizes the prosecutor's use of expressions such as "he will say" or "he insists" in regard to Turner as an innocent and innocuous failure to use the past tense when describing the defendant's admissions. Even if the prosecutor could be understood as commenting on Turner's failure to testify, the State contends that those comments were harmless beyond a reasonable doubt. In this context, the State argues, the proper test for prejudice is whether the prosecutor's statements were, or were manifestly intended to be, of such character that the jury would naturally and necessarily take them to be comments on the accused's failure to testify. We reject the State's argument.

In *State v. Tibbetts*, Me., 299 A.2d 883, 886–90 (1973), this Court discussed at length the manner in which a prosecutor's comment on the defendant's failure to testify may implicate the defendant's constitutional and statutory privilege against self-incrimination. We held that any adverse comment, whether clear or ambiguous, on the defendant's failure to testify violates the defendant's right to remain silent and requires the granting of a mistrial unless the comment appears harmless beyond a reasonable doubt. Whether the comment may be deemed harmless beyond a reasonable doubt depends on the directness of the reference and the clarity of the language used by the prosecutor.

In two situations, comment by the prosecutor on the defendant's refusal to take the witness stand must be considered harmful as a matter of law. The first situation occurs when the prosecutor makes a direct, unambiguous, and unequivocal comment on the defendant's failure to become a witness. *State v. Tibbetts, supra*, at 889. The second occurs when the prosecutor makes statements which, although indirect, nevertheless clearly and unequivocally suggest to the jury that they must accept the State's evidence as true because the defendant has not denied it as a witness. *Id*. In a third situation, where the prosecutor makes ambiguous remarks that could be construed by the jury as comments on the

defendant's failure to testify, the prosecutor's statements are not deemed harmful as a matter of law. However, in that situation, for the statement to be deemed harmless, the State must demonstrate beyond a reasonable doubt that the record contains no evidence, direct or circumstantial, that would rationally support acquittal. *Id.*

Although this Court has repeatedly applied the *Tibbetts* analysis to prosecutorial comment in closing argument to the jury, *see, e.g., State v. Libby*, Me., 410 A.2d 562 (1980), we have not had occasion until now to consider whether that analysis must also be applied to a prosecutor's remarks during opening statement. We conclude that the *Tibbetts* standards apply equally to summation and opening argument. The defendant's privilege against self-incrimination is violated as much as by a comment on his impending failure to take the stand as by a reference to his completed election not to become a witness. A prosecutor's adverse comment on the possibility that the defendant may not testify represents a variation on the second species of comment that is deemed harmful as a matter of law under *Tibbetts*: a suggestion by the prosecutor that the State's evidence must be accepted as true if the defendant does not attempt to rebut that evidence as a witness. *See Clark v. State*, 256 Ark. 658, 509 S.W.2d 812 (1974). Such a suggestion may also have the effect of subjecting the defendant to an unconstitutional coercion to testify. *See Smith v. State*, 358 So.2d 1137 (Fla.App. 1978).

In the present case, defendant Turner elected not to become a witness; hence, it would be speculative for this Court to consider whether the prosecutor's remarks might potentially have had a coercive effect on him. However, the prosecutor's remarks during opening statement must be regarded as amounting to an ambiguous suggestion to the jurors that Turner had an obligation to testify in his own defense and that if he did not, they should accept the State's evidence of his guilt as conclusive. The prosecutor preceded his remarks about Turner with a pointed reference to the fact that Kenneth Yunker, the only person who had observed the events surrounding the collision, was present and ready to testify for the State. Then the prosecutor described a series of exculpatory statements that the jury could reasonably infer were to be offered by Turner personally from the witness stand. Finally, the prosecutor alerted the jury that "defendant will surely try to raise doubts in your mind as to who was driving that vehicle when it struck William Roy." When the jury became aware at the close of all the evidence that Turner was not going to testify, they could have deduced from his silence that he had conceded the State's evidence of his guilt was irrefutable. The possibility of that inference requires a prohibition of all prosecutorial comment on a criminal defendant's election to remain silent.

We need not decide whether the prosecutor's statements represented clear, rather than ambiguous, references to the absence of testimony by Turner. Even if they were no worse than ambiguous, the State has the burden of showing beyond a reasonable doubt that the record contains no evidence that would have rationally supported acquittal. The State has not met that burden. On the manslaughter charge, it would not have been irrational for the jury to find from the evidence that the area where the collision occurred was poorly lighted and that William Roy had accidently turned the front wheel of his bicycle into the path of the automobile at the last moment. From those findings, the jury could have rationally concluded that even if Turner had not been driving with due care when he struck the victim, his disregard of the risk or his failure to be aware of the risk did not involve a *gross* deviation from the standard of conduct that a reasonable and prudent person would have observed in the same situation.[3] Also, it would not have

---

**3.** 17–A M.R.S.A. § 10 (1980 Supp.) provides, in part:

3. "Recklessly."

A. A person acts recklessly with respect to a result of his conduct when he consciously

been irrational for the jury to conclude, from significant gaps in the circumstantial evidence, that a reasonable doubt existed whether defendant Turner, rather than Byron Taylor, had been operating the automobile at the time of the accident. It cannot be said that the record contains no evidence rationally supporting acquittal. Hence, because Turner's constitutional privilege of not testifying was impugned, the judgment of conviction must be set aside.

 Our discussion of the record should not be understood as implying that the evidence was insufficient to support the defendant's conviction for either of the offenses with which he was charged. Despite our conclusion that the evidence could have supported a rational verdict of acquittal, we conclude that, on all the evidence, the jury could have rationally found Turner guilty beyond a reasonable doubt. *State v. Goodrich*, Me., 432 A.2d 413 (1981). Nevertheless, where, as here, the prosecutor makes comments impugning the defendant's exercise of his right to remain silent, the sufficiency of the evidence supporting guilt is not determinative. As long as the record contains evidence that would have rationally supported acquittal of the defendant, we cannot conclude that the prosecutor's comments were harmless beyond a reasonable doubt.

None of the other issues raised by the appellant requires the attention of this Court.

The entry is:

Appeal sustained.

Judgment of conviction vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

disregards a risk that his conduct will cause such a result.
B. A person acts recklessly with respect to attendant circumstances when he consciously disregards a risk that such circumstances exist.
C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.
4. "Criminal negligence."
A. A person acts with criminal negligence with respect to a result of his conduct when he fails to be aware of a risk that his conduct will cause such a result.
B. A person acts with criminal negligence with respect to attendant circumstances when he fails to be aware of a risk that such circumstances exist.
C. For purposes of this subsection, the failure to be aware of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.