1998 ME 225

1998 ME 225

## STATE of Maine

v.

## Joseph Henry LYONS, III.

Supreme Judicial Court of Maine.

Argued Sept. 11, 1998.

Decided Oct. 5, 1998.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty. (orally), Portland, for the State.

Peter E. Rodway (orally), Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

RUDMAN, Justice.

[¶ 1] Joseph Henry Lyons, III appeals both from the judgment entered in the Superior Court (Cumberland County, *Cole. J.*) following a jury verdict finding him guilty on two counts of gross sexual assault in violation

of 17–A M.R.S.A. § 253 (1983 & Supp.1997)[1] and from the sentences imposed. Lyons contends that the trial court erred by refusing to grant a mistrial in response to the State's improper closing argument. Although we agree the State's argument was improper, we conclude that, absent the prosecutor's allusion to the failure of the defendant to present evidence, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. We therefore affirm the conviction and the sentences imposed.[2]

[¶ 2]  The State presented evidence at trial that, if believed, would establish the elements of the crimes charged. Lyons did not testify or present evidence. During closing argument, the State argued:

> What motive does [the victim] have to tell you these things except that they are true?
>
> That is the question you have to ask yourself. Do you ascribe to this victim a sinister motive? Is he making it all up for some reason to pin it on [the defendant]? What would that reason be?
>
> Now, your decision in this case has to be based on the evidence in this case. Ask yourself this: What have you been offered in the way of evidence in this case that suggests to you any other motive than the truth? That's the decision you will have to make for yourself. That is the question

you will ask yourself during your deliberations.

After the State's closing argument, Lyons moved for a mistrial on the ground that the State had improperly commented upon Lyons' failure to testify or offer evidence. The State disputed his contentions and replied that Lyons did in fact offer evidence through stipulations and cross-examination.

[¶ 3]  The court refused to grant a mistrial. Although the court remarked that the State was on "thin ice," it ruled that the statement, when viewed in context, did not "suggest or comment on the defense not putting on any testimony or witnesses including the defendant." The court later instructed the jury on the presumption of innocence and that they should not draw conclusions based on Lyons' decision not to testify.

[¶ 4]  During rebuttal, the State argued:

> When you look at the evidence in this case, the stipulations entered into by both the defense and the state, all of the evidence in this case, including those stipulations, what evidence do you have that [the victim] has made this up? And what evidence do you have based on his testimony, his demeanor, the items found by the police, and the inherent believability of the sensations that [the victim] described to you that in fact what he told you is in fact what happened?

---

1.  17–A M.R.S.A. § 253 provides in pertinent part:

**§ 253.  Gross sexual assault**
**1.**  A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:
. . . .
**B.**  The other person, not the actor's spouse, has not in fact attained the age of 14 years.
. . . .
**H.**  The other person has not in fact attained the age of 18 years and the actor is a parent, stepparent, foster parent, guardian or other similar person responsible for the long-term care and welfare of that other person:
. . . .
17–A M.R.S.A. § 253 (1983 & Supp.1997).
    Section 251 of Title 17–A defines the term "sexual act" as follows:
**C.**  "Sexual act" means:
**(1)**  Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or

direct physical contact between the genitals of one and the genitals of the other;
**(2)**  Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or
**(3)**  Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.
    A sexual act may be proved without allegation or proof of penetration.
17–A M.R.S.A. § 251.1.C (1983 & Supp.1997).

2.  Lyons was sentenced to a concurrent term of fifteen years in the Department of Corrections with all but ten years suspended and six years of probation.

After the court instructed the jury, Lyons renewed his motion for mistrial based on the State's rebuttal. The court declined to declare a mistrial on the ground that it did not think the State's rebuttal comments referred to Lyons' "failure to testify or present live witnesses." The State's argument did not clearly and unequivocally refer to Lyons' failure to testify or present evidence to challenge the State's evidence. We conclude, however, that the remarks are ambiguous— subject to more than one interpretation. By including these ambiguous statements, the prosecutor unnecessarily risked our vacating the judgment entered on the jury's verdict.

█ [¶ 5] We review claims of improper prosecutorial comment on a criminal defendant's failure to testify under a "harmless error" standard of review, subject to the analysis we set forth below. *See State v. Ingalls*, 544 A.2d 1272, 1275–76 (Me.1988). We have held that the Maine and United States Constitutions, Maine statutory law, and precedent "prohibit either direct or equivocal prosecutorial comment on the defendant's failure to testify." *State v. Libby*, 410 A.2d 562, 563 (Me.1980) (citing U.S. Const. amend. V; Me. Const. art. I, § 6; 15 M.R.S.A. § 1315 (1980)).[3]

[¶ 6] In *State v. Tibbetts* and its progeny, we identified three types of improper prosecutorial comment on a criminal defendant's decision not to become a witness: (1) a direct, unambiguous comment on the defendant's failure to testify; (2) an indirect comment that unambiguously suggests that the jury must accept the State's evidence as true because the defendant has not denied it as a witness; and (3) an ambiguous comment that

the jury could construe as a remark on the defendant's failure to testify. *See State v. Tibbetts*, 299 A.2d 883, 889 (Me.1973); *State v. Turner*, 433 A.2d 397, 400–01 (Me.1981); *Ingalls*, 544 A.2d at 1275–76.

█ [¶ 7] Under the *Tibbetts* rule, an *unambiguous* comment on a defendant's failure to testify, whether direct or indirect, constitutes *per se* reversible error and can never be deemed harmless error, as a matter of law. *See Tibbetts*, 299 A.2d at 889. On the other hand, an *ambiguous* comment does not constitute *per se* reversible error; however, the State has the burden of proving beyond a reasonable doubt that such comment constituted harmless error, when viewed in the context of the entire record. *See Ingalls*, 544 A.2d at 1276.[4] In other words, to determine whether an ambiguous prosecutorial comment constitutes harmless error, we ask whether, "[a]bsent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the [State's evidence, it is] clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *Id.* at 1275 (quoting *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)).

█ [¶ 8] In applying this harmless error rule for ambiguous comments, we base our judgment on: (1) our "own reading of the record"; and (2) "what seems to [us] to have been the probable impact of the [improper prosecutorial comment] on the minds of an average jury."[5] *Ingalls*, 544 A.2d at 1276 (quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)). "[W]e are not required to reverse

---

3. 15 M.R.S.A. § 1315 (1980) provides, in relevant part: "In all criminal trials, the accused shall, at his own request but not otherwise, be a competent witness. . . . The fact that he does not testify in his own behalf shall not be taken as evidence of his guilt."

4. In *Ingalls*, we reformulated the third prong of the *Tibbetts* rule, which addresses "ambiguous" prosecutorial comments, and we stated:

   Although in *Tibbetts* we articulated the standard as whether beyond a reasonable doubt the evidence would not support acquittal, it is now apparent from Supreme Court cases decided in the 15 years after *Tibbetts* that the appropriate focus is whether on the record

before us the prosecutorial comment through error was harmless beyond a reasonable doubt. *Ingalls*, 544 A.2d at 1276. We further noted the goal of conserving judicial resources by limiting appellate review to prejudicial error "without becoming mired in harmless error." *Id.* at 1276 (citing *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); R. Traynor, *The Riddle of Harmless Error* 81 (1970)).

5. Our inquiry extends "not to the effect of the error on the actual jury or to the *reasonably possible* effect of the error on an average jury, but to its *probable impact* on [an average] jury." *Ingalls*, 544 A.2d at 1276 (quoting R. Traynor, *The Riddle of Harmless Error* 45).

merely because it is possible for an appellate court to 'imagine a single juror whose mind might have been made up because of [that comment] and who otherwise would have remained in doubt and unconvinced.'" *Id.*

[¶ 9] Therefore, our analysis of an improper prosecutorial comment on a criminal defendant's failure to testify consists of: (1) determining which of the three *"Tibbetts* categories" the comment falls under; and (2) applying the appropriate prong of the *Tibbetts* rule to such comment.[6] *See Tibbetts,* 299 A.2d at 889. A court applying this *Tibbetts* analysis must view the prosecutorial comment in the context of the entire record. *See Ingalls,* 544 A.2d at 1276.

[¶ 10] Lyons conceded that the State's comment did not fall under the first *Tibbetts* category, because the statement was not a direct, unambiguous comment on his failure to testify.

■ [¶ 11] However, Lyons contends that the State's comment fell under the second *Tibbetts* category because it was an indirect comment that unambiguously suggested that the jury must accept the State's evidence as true since Lyons did not testify in his own defense. Hence, Lyons argues, the State's comment constituted *per se* reversible error under the second prong of the *Tibbetts* rule. When viewed in context, the State's comment neither unambiguously nor indirectly refers to Lyons' failure to testify. Although Lyons could have presented more evidence by testifying, the prosecutorial comment referred specifically to the trial evidence, including the State's evidence and the defense evidence consisting of stipulations and cross-examination testimony. Therefore, viewed in context, the State's remark was not an indirect yet unambiguous comment on Lyons' failure to testify and no prejudicial error occurred as a matter of law.

■ [¶ 12] We conclude, however, that the State's comment is ambiguous, and falls under the third *Tibbetts* category. The State

thus has the burden of proving beyond a reasonable doubt that the ambiguous comment constituted harmless error, in light of the entire record. *See Ingalls,* 544 A.2d at 1276. Therefore, under the third *Tibbetts* prong (as *Ingalls* reformulated it), the State's comment constitutes prejudicial error if the State fails to prove beyond a reasonable doubt that the jury would have returned a guilty verdict absent the comment. *Id.* at 1275.

[¶ 13] Looking at the entire record, we conclude that the State's comment was "harmless in its probable impact," because it simply refuted Lyons' assertions that the victim had a motive to lie and suggested that the evidence failed to support an inference that the victim testified untruthfully. *Ingalls,* 544 A.2d at 1276. In light of the substantial evidence pointing to Lyons' guilt, it is clear beyond a reasonable doubt that, absent the comment, an average jury would have found every element of the crimes charged and returned a guilty verdict. *See id.*

The complete absence of evidence tending to show that [defendant] *could not* have committed the crime, the meager amount of evidence which, if believed, would tend to show that it was *unlikely* that he did so when viewed against the evidence pointing toward guilt ... satisfy us beyond a reasonable doubt that the prosecutor's ill-advised comment was, in fact, harmless.

*Ingalls,* 544 A.2d at 1276 (quoting *State v. Inman,* 350 A.2d 582, 595 (Me.1976)). What we said in *Ingalls* is equally applicable here. Even if a jury could reasonably construe the State's ambiguous comment to refer to Lyons' failure to testify, it is clear beyond a reasonable doubt that an average jury unexposed to the comment would still have returned a guilty verdict. *See Id,* at 1275. Therefore, the State's improper ambiguous comment constituted harmless error.

---

**6.** In other words, under the first prong of the *Tibbetts* rule, direct and unambiguous comments constitute *per se* reversible error. *See Tibbetts,* 299 A.2d at 889; *Turner,* 433 A.2d at 400; *Ingalls,* 544 A.2d at 1276. Under the second *Tibbetts* prong, indirect yet unambiguous comments

also constitute *per se* reversible error. *See id.* Under the third prong, ambiguous comments constitute reversible error unless the State meets its burden of proving harmless error beyond a reasonable doubt. *See id.*

[¶ 14] The balance of Lyons' contentions are without merit.

The entry is:

Judgments of conviction affirmed; sentences affirmed.

