1999 ME 106

Steven G. JOHNSON et al.

v.

AMICA MUTUAL INSURANCE CO.

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1999.

Decided July 8, 1999.

Ralph Dyer, Portland, for the plaintiffs.

Martica Douglas, Douglas, Denham, Rogers & Hood, Portland, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

PER CURIAM.

[¶ 1]  Steven G. Johnson and Roselle F. Johnson appeal from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of Amica Mutual Insurance Company in the Johnsons' suit alleging a duty to defend and indemnify them in connection with a third-party action brought against them.  The Johnsons' contentions lack merit.  We affirm the judgment.

[¶ 2]  The parties dispute the scope of coverage provided under a homeowners insurance policy that Amica issued to the Johnsons.  Vincent Herzog brought a suit against the Johnsons during the policy period, alleging that they converted bank account funds and reimbursement payments.  Amica refused to defend and indemnify the Johnsons in the Herzog suit, based on the policy's coverage provisions and exclusion provisions.  The Johnsons brought suit against Amica seeking, *inter alia,* a declaratory judgment that Amica had the duty to defend and indemnify them in the Herzog suit.  Amica moved for a summary judgment on the basis that it had no duty to defend or indemnify the Johnsons under the policy.  On the day after the court heard oral argument from the parties on Amica's motion, Amica submitted a letter and copies of three cases supporting its position that the alleged conversion was "strictly an economic loss" that did not qualify as "property damage" under the policy.  The Johnsons filed a written objection to Amica's post-hearing submission on the grounds that: (1) the submission was "an affront to the finality of the pleading steps outlined in Rule 7"; and (2) the cases were "of doubtful relevance."  The court acknowledged receipt of Amica's submission and the Johnsons' objection thereto, and offered the Johnsons an opportunity to respond.  The Johnsons declined to respond and, instead, asked the trial justice to: (1) strike the new cases from the record; (2) recuse herself; and (3) refer the matter to another judge.  The trial justice denied the Johnsons' request that she recuse herself, and entered a judgment in favor of Amica.  This appeal followed.

I.

[¶ 3]  Although the Johnsons claim they are entitled to a defense and indemnification, their claim has no basis, either in law or in fact.  The relevant coverage provision provides: "If a ... suit is brought against any **insured** for damages because of ... **bodily injury** or **property damage** caused by an occurrence to which this coverage applies, we will ... [p]ay up to our limit of liability for the damages for which the **insured** is legally liable ... and ... [p]rovide a defense at our expense by counsel of our choice ...."  The policy defines the term **"occurrence"** as an "accident ... which results, during the policy period, in [b]odily injury** [or] [p]roperty damage."  The policy defines the term **"property damage"** as "physical injury to, destruction of, or loss of use of tangible property."

[¶ 4]  Contrary to the Johnsons' contention, the allegedly converted bank account funds constitute intangible, rather than tangible, property.  According to BLACK'S LAW DICTIONARY 809, 1456 (6th ed.1990):(1) "tangible property" is property with "physical form and substance" that "may be felt or touched, and is necessarily corporeal, although it may be either real or personal"; and (2) "intangible property" is property that has "no intrinsic and marketable value, but is merely the represen-

tative or evidence of value, such as certificates of stock, bonds, promissory notes, copyrights, and franchises." Bank account funds are not "tangible property," because they have no physical presence. Rather, bank account funds are "intangible property," because they have no intrinsic value and merely represent, or are evidence of, value. Other courts have similarly concluded that bank account funds constitute intangible property. *See, e.g., Allstate Ins. Co. v. Russo*, 829 F.Supp. 24, 27 (D.R.I. 1993) ("Bank deposits create a debtor-creditor relationship between the bank and the depositor. A deposit, therefore, is not held in specie in the bank's vaults for the depositor, but rather is an intangible chose in action.") (citations omitted); *Travelers Indem. Co. v. State*, 140 Ariz. 194, 680 P.2d 1255, 1257 (1984) ("The deposit of funds [in a bank] creates a debtor-creditor relationship between the bank and the depositor. A credit is a chose in action, and a chose in action is intangible property.") (citations omitted); *Cartwright v. Deposit Guar. Nat'l Bank*, 675 So.2d 847, 847–48 (Miss. 1996) (stating that deposits into a bank account change form from tangible currency and checks into intangible accounting credits, and "money on deposit in a bank evidences a right of payment from the bank and is thus intangible in nature"); *Grochowski v. Larson (In re Estate of Larson)*, 196 Wis.2d 231, 538 N.W.2d 802, 803 (1995) ("A bank account is a contract between a depositor and a financial institution for the deposit of funds.... Since bank deposits, checks, annuities and trust agreements are all agreements or documents conferring rights to the management and payment of money or assets, they fall within the definition of intangible personal property rather than tangible personal property."). Therefore, the allegedly converted bank account funds do not qualify as "tangible property" within the meaning of the policy.

[¶ 5] The alleged conversion of reimbursement payments in this case would have resulted in an intangible economic loss, rather than a "loss of use of tangible property." Granted, money (*i.e.*, the currency itself) may constitute tangible property. *See, e.g., Coulter v. CIGNA Property & Cas. Cos.*, 934 F.Supp. 1101, 1123 (N.D.Iowa 1996) ("[M]oney might be considered 'tangible property' in situations where money has actually been destroyed or damaged."); *Security State Bank of Kansas City v. Aetna Cas. & Sur. Co.*, 825 F.Supp. 944, 947 (D.Kan.1993) ("The destruction of a stack of currency could certainly be considered a destruction of tangible property. The moment it is destroyed[,] an irreversible loss of wealth has occurred. The destruction or loss of a check or other debt instrument is a different matter."); *Walker v. State Farm Fire & Cas. Co.*, 569 N.W.2d 542, 544 (Minn.Ct. App.1997) (distinguishing between loss of tangible currency and loss of intangible economic value of promissory note). Herzog's complaint merely alleges economic injury, and does not allege any "bodily injury" or "physical injury to, destruction of, or loss of use of tangible property," as the policy defines those terms. Herzog's complaint alleges that Steven Johnson deprived him of his right to reimbursement by falsely attributing some of Herzog's work to himself, and seeks damages to compensate him for his resulting economic injury. A right of payment is intangible in nature. *See Cartwright*, 675 So.2d at 848. Therefore, the allegedly converted payments do not qualify as "tangible property," and the policy's coverage provision does not apply to the allegations in Herzog's complaint.

[¶ 6] Even if the Herzog suit fell within the scope of the policy's liability coverage, exclusion 1(b) applies. That exclusion provides that the coverage does not apply to "**bodily injury or property damage** ... [a]rising out of or in connection with a **business** engaged in by an **insured.**" Under the policy, " '[b]usiness' includes trade, profession or occupation." Clearly, any alleged bodily injury or property damage arose out of and in connection with the Johnsons' trade, profession, or occupation.

Therefore, exclusion 1(b) specifically precludes coverage for defense and indemnification in the Herzog suit.

[¶ 7] The general allegations in Herzog's complaint give rise to no set of facts that would establish coverage under the policy. *See Maine Mut. Fire Ins. Co. v. Gervais,* 1998 ME 197, ¶ 7, 715 A.2d 938, 940. The Herzog suit did not fall within the scope of the liability coverage and, even if it did, the policy's exclusion provision 1(b) explicitly precludes coverage. Therefore, Amica has no duty to defend the Johnsons in the Herzog suit, and the trial court did not err in granting a summary judgment in favor of Amica.

## II.

[¶ 8] Without citing any relevant or binding precedent, the Johnsons also contend that the trial court erred in considering Amica's post-hearing submission of case law. Although the Johnsons refer vaguely to Maine Rules of Civil Procedure 7 and 15(d) in support of their argument, they fail to point to any specific language that would preclude Amica from submitting cases after a hearing on motions for a summary judgment. It is solely within the court's discretion to decide whether to accept and review additional authorities provided after oral argument. In most circumstances, no reply to such a submission is even necessary since the authorities submitted are likely to have been discussed at argument. At most, the opposing party may be given an opportunity to respond. The court did exactly that here.

[¶ 9] Even if the Johnsons could point to some error in the court's action, the Johnsons are not entitled to any remedy. The Johnsons ask us to vacate the summary judgment and remand the case for a rehearing on the very issue of law now before us (*i.e.,* whether Amica has a duty to defend the Johnsons in the Herzog suit). The Johnsons maintain that both parties "are entitled to a final decision on

their motions [for a summary judgment] in the Superior Court and to *de novo* review of that decision in [the Law Court]." The Johnsons contend that our *de novo* review of the issue of law is an inadequate substitute for a *de novo* hearing in the Superior Court because "[a]n initial decision on the merits in the Law Court would deny both parties the right to appeal." The Johnsons' contention is utterly devoid of merit and demonstrates a fundamental misunderstanding of the nature of *de novo* review, as well as an apparent disregard for the conservation of scarce judicial resources.

## III.

[¶ 10] The Johnsons further contend that the trial court abused its discretion in denying their motion to recuse, because they claim that the justice reached her decision based on Amica's post-hearing argument and "it is not reasonable to ask her to excise the evil thoughts from her mind and reach a new decision on the merits uninfluenced by her previous action and free of any conscious or subconscious need to validate her previous action." They erroneously assert that they are "entitled to recusal if any reasonable person would be concerned about the impartiality of the Court."

[¶ 11] "Recusal is a matter within the broad discretion of the trial court." *Estate of Dineen,* 1998 ME 268, ¶ 8, 721 A.2d 185, 188. "Accordingly, we review the denial of a motion to recuse for an abuse of discretion." *Id.* "[I]nformation gained or opinions formed by a trial judge based on events or facts presented in the same or other judicial proceedings do not constitute a basis for recusal except in the extraordinary circumstances that demonstrate a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* ¶ 9, 721 A.2d at 188 (quotations omitted). The Johnsons have failed to demonstrate, or even allege, a "deep-seated favoritism or antagonism that

would make fair judgment impossible."[1] *Id.* (quotations omitted). The court did not abuse its broad discretion in denying the motion to recuse.

## IV.

[¶ 12] The Johnsons' post-hearing actions in the trial court display disrespect for the court, and their appeal from the court's refusal to recuse itself is an insult to the appellate process. We cannot tolerate such abusive consumption of the court system's limited resources by litigants who choose to litigate baseless suits and to present meritless issues on appeal. We, therefore, impose sanctions on the Johnsons and their counsel in the amount of $1,000 to be paid to the defendant as partial reimbursement for its expenses in the defense of the Johnsons' actions.

The entry is:

Judgment affirmed with sanctions against the plaintiffs and their counsel in the amount of $1,000.

1. Rather, the Johnsons claim to believe there is a "reasonable possibility that they will not receive a completely impartial hearing before Justice Mills." However, the mere belief that a judge might not be "completely impartial" is insufficient to warrant a recusal if the judge believes she can act with complete impartiality. *See* Maine Code of Jud. Conduct Canon 3(E); *State v. Rameau*, 685 A.2d 761, 763 (Me.1996); *Wood v. Wood*, 602 A.2d 672, 674 (Me.1992). "The possibility that a motion justice might be improperly influenced by evidence that had not been admitted during a previous trial, but would not be admissible in the present case[,] is a wholly inadequate ground for disqualification." *Rameau*, 685 A.2d at 763 (internal quotations omitted). "The motion justice need not disqualify herself if she believes she can act with complete impartiality and where there are no reasonable grounds for questioning her ability to do so." *Wood*, 602 A.2d at 674.