2010 ME 12

**STATE of Maine**

v.

**Shannon R. ATWOOD.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2010.
Decided: Feb. 18, 2010.

Merritt T. Heminway, Esq. (orally), Portland, ME, for Shannon Atwood.

William Stokes, Deputy Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, and MEAD, JJ.

ALEXANDER, J.

[¶ 1] Shannon R. Atwood appeals from a judgment of conviction of murder, 17–A M.R.S. § 201(1)(A) (2009), entered in the Superior Court (Somerset County, *Delahanty, J.*) after a jury-waived trial before the court (*Mills, J.*). Atwood argues that: (1) the court erred by denying his motion for a new trial because the presiding justice did not recuse before finding Atwood guilty; and (2) the court abused its discretion by considering inadmissible hearsay evidence at the trial. We affirm Atwood's conviction.

## I. BACKGROUND

[¶ 2] Viewing the facts in the light most favorable to the State, the court could have rationally found the following facts beyond a reasonable doubt. *See State v. Bruzzese*, 2009 ME 61, ¶ 2, 974 A.2d 311, 312. Atwood and Cheryl Murdoch were involved in a romantic relationship during the summer of 2006. Murdoch had moved into Atwood's residence because she was experiencing financial difficulties. A month before she moved in with Atwood, Murdoch sent her daughter to live temporarily with her mother, the child's grandmother, in Arizona.

[¶ 3] Murdoch spoke with her mother on the telephone regularly throughout July of 2006. During these conversations, Murdoch advised her mother that she planned to drive to Arizona with Atwood, in Atwood's tractor-trailer truck, to retrieve her daughter and bring her back to Maine. In addition to telling her mother about her plans to travel to Arizona in July, Murdoch told at least five other people of a similar intention, including her sister, her former boyfriend, and three other acquaintances.

[¶ 4] The morning of July 27, 2006, Murdoch, in a telephone conversation, told her mother that she and Atwood were departing for Arizona at noon of that day, and that Atwood was to stop at a nuclear facility and make a delivery, as part of his employment, during the trip. That telephone conversation was the last time Murdoch was known to be alive.

[¶ 5] After Murdoch failed to arrive in Arizona as scheduled, her mother attempted to reach her by calling her cell phone,

but received no answer. Becoming worried, Murdoch's mother called several trucking companies to discern where Atwood worked, and she called facilities where she thought Atwood may have made a delivery. At that time, Atwood did not work for a trucking company nor did he own, or have access to, a tractor-trailer truck.

[¶ 6] On July 26, 2006, the day before Murdoch's disappearance, one of Atwood's friends received a telephone message from Atwood stating that he wanted to speak with her. The phone number Atwood left for his friend to call was Murdoch's cell phone number. When the friend returned the call, Atwood told her that he had received this new phone for free. The phone was ultimately found by the police broken and in pieces in Atwood's trash, despite his assertions that he had never found Murdoch's phone.

[¶ 7] On July 27, 2006, the same friend spoke again with Atwood on the telephone. Atwood told the friend that he was calling from his campsite in the woods and gave the friend directions to his location. Believing she could get lost in an attempt to find the campsite, the friend wrote down the directions given to her by Atwood.

[¶ 8] As a result of Murdoch's disappearance, two police officers interviewed Atwood at his residence in August 2006. During one such visit, the officers observed Murdoch's car parked on the property with no license plates attached. Soon thereafter, the officers found Murdoch's license plates under a workbench in Atwood's barn. Atwood maintained that he had ordered Murdoch to leave his home because of her drug use, and that she would be returning for her vehicle later.

[¶ 9] The police then used the directions given to Atwood's friend to locate the campsite described by Atwood. Atwood was confirmed to have visited the campsite after cigarette butts found near the remnants of a fire pit were analyzed and determined to contain DNA evidence consistent with Atwood's DNA. Using cadaver dogs to search the area, the police located Murdoch's body approximately one-half mile from the campsite. A short length of rope was found near the body. After being analyzed by the Maine State Crime Laboratory, the rope was determined to be chemically and structurally identical to pieces of rope later found in Atwood's barn.

[¶ 10] On August 13, 2006, in an attempt to execute a search warrant at Atwood's residence, police found Atwood's front door barricaded by a paddle. After Atwood gave no response to the officers' knock and announcement, the officers entered the building. Inside, Atwood was locked in his bedroom and told the officers that if he came out of the room, he would be armed. In addition, Atwood referenced leaking gas and threatened to light a cigarette. Eventually, the police secured the area and Atwood was taken into custody.

[¶ 11] Atwood was indicted by the Somerset County Grand Jury for murder, 17–A M.R.S. § 201(1)(A). During the five-day, jury-waived trial, Atwood objected to the testimony given by Murdoch's mother, sister, and friends regarding Murdoch's stated intention to travel to Arizona with Atwood on July 27, 2006. Atwood argued that the statements were inadmissible hearsay and irrelevant. The State responded that the statements fit within the hearsay exception for then-existing state of mind pursuant to M.R. Evid. 803(3), and that they were relevant to show that Atwood had both an opportunity and a motive to commit the murder.

[¶ 12] After considering the State's offer of proof, the court permitted the introduction of the disputed testimony, but limited it to those statements made by Murdoch during the week before she had stated that she was to leave for Arizona.

The court determined that the testimony offered was both highly reliable and relevant.

[¶ 13] On July 2, 2008, after the close of the evidence, but prior to rendering the verdict, the court held an in-chambers conference with counsel. The presiding justice disclosed that over the previous weekend, she had noticed a photo of her former hairdresser in a newspaper article related to the trial. The justice stated that she stopped reading the newspaper article as soon as she recognized her former hairdresser, and that she had not spoken with that acquaintance for at least two years. Atwood's attorneys made no objection and responded that they "were confident" in the justice's ability to preside and render a fair verdict.

[¶ 14] Later that day, the court found Atwood guilty of murder. Because the State's case was largely based upon circumstantial evidence, the court considered explanations for the evidence consistent with Atwood's innocence, in addition to evidence presented by the defense of other potential suspects. Ultimately, the court concluded, beyond a reasonable doubt, that Atwood was the person who had deposited Murdoch's body in the woods, and was the person who, by using extreme force, caused her fatal injuries. After announcing its guilty verdict, the court continued the case for sentencing.

[¶ 15] A month later, on August 8, 2008, Atwood moved for a new trial pursuant to M.R.Crim. P. 33.[1] Atwood contended, in part, that because the justice's former hairdresser had been the victim of a previous criminal assault by Atwood, the justice should have recused herself, sua sponte, from presiding over Atwood's trial

due to an appearance of impropriety. Atwood's motion for a new trial was denied on October 8, 2008. In its denial order, the court stated that it could not have anticipated the connection between the former hairdresser and the Atwood trial because the hairdresser was not listed as a witness and "the court had no personal knowledge of that connection."

[¶ 16] On November 18, 2008, prior to sentencing, the justice issued an order recusing from further involvement in Atwood's sentencing. In the recusal order, the justice stated:

Based on the information provided to the court after the verdict was rendered, the court has determined to recuse itself from further involvement in this case. Most of the information provided would not have been admissible at sentencing if defense counsel had objected. The information now connects the court to issues in this case. The information creates a circumstance in which impartiality might reasonably be questioned.

[¶ 17] While the recusal discussion was appropriately brief, the referenced "information provided" after the verdict indicated that the individual in question had been a victim of an assault by Atwood. That information may have been relevant to sentencing.

[¶ 18] The Chief Justice of the Superior Court appointed a different justice for sentencing. On February 25, 2009, Atwood was sentenced to fifty-five years in prison (*Delahanty, J.*). Atwood filed this timely appeal.[2]

## II. DISCUSSION

■ [¶ 19] Atwood contends that because the trial justice exercised her discre-

---

1. M.R.Crim. P. 33 states in relevant part that "the court on motion of the defendant may grant a new trial to the defendant if required in the interest of justice."

2. Atwood also filed an application for leave to appeal sentence, pursuant to M.R.App. P. 20 and 15 M.R.S. § 2151 (2009). The Sentencing Review Panel denied Atwood's application on September 29, 2009.

tion to recuse herself from his sentencing hearing, a shadow of impropriety has also been cast over the justice's ability to render an unbiased verdict. As a result, Atwood argues that he is entitled to a new trial. In addition, Atwood argues that the court abused its discretion by considering inadmissible hearsay regarding Murdoch's intention to travel to Arizona.

## A. Recusal

[¶ 20] We have long held that recusal "is a matter within the broad discretion of the trial court." *Johnson v. Amica Mut. Ins. Co.*, 1999 ME 106, ¶ 11, 733 A.2d 977, 980 (quotation marks omitted). Accordingly, a decision by a trial judge not to recuse is reviewed for an abuse of discretion. *Estate of Dineen*, 1998 ME 268, ¶ 8, 721 A.2d 185, 188.

[¶ 21] Pursuant to the Maine Code of Judicial Conduct, a judge must recuse herself on motion made by any party if her "impartiality might reasonably be questioned" or if she has a "personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." *DeCambra v. Carson*, 2008 ME 127, ¶ 8, 953 A.2d 1163, 1165 (citing M.Code Jud. Conduct 3(E)(2) and 3(E)(2)(a)). The "mere belief" that a judge might not be completely impartial is insufficient to warrant recusal. *Johnson*, 1999 ME 106, ¶ 11, n. 1, 733 A.2d at 981.

[¶ 22] If recusal is warranted, a judge is under no obligation to disclose the grounds of disqualification. M.Code. Jud. Conduct 3(E)(1). If, however, information is made known to the court, and the judge determines recusal is not appropriate, the judge "shall promptly disclose to the parties . . . any fact known to the judge that is relevant to the question of impartiality." M.Code. Jud. Conduct 3(E)(3). If there is no reasonable basis for recusal, a judge is as much obliged not to recuse when it is not necessary, as she is obliged to recuse when it is necessary. *See In re Michael M.*, 2000 ME 204, ¶ 14, 761 A.2d 865, 868.

[¶ 23] Here, Atwood's argument is without merit. It is apparent that the presiding justice did not abuse her discretion by declining to recuse herself, sua sponte, before rendering the verdict. To the contrary, the justice complied with both the Maine Judicial Code of Conduct and with precedent stated by this Court. After the justice recognized that a former acquaintance may have had a connection to the Atwood trial, she determined, based on what she then knew, that the connection did not affect her ability to be impartial. Consequently, the justice notified the parties of the circumstances surrounding her decision. Upon learning this information, counsel for Atwood made no objection and affirmatively expressed confidence in the justice's ability to render a fair verdict.

[¶ 24] In addition, when new information was made known to the court after the verdict was announced, the justice voluntarily recused herself from further involvement. This action was entirely appropriate given the different judicial tasks and considerations associated with the sentencing process and the information learned by the court, after the verdict, that may have been relevant to sentencing. *See* 17-A M.R.S. § 1252-C(2) (2009).[3]

---

**3.** Title 17–A M.R.S. § 1252–C(2) (2009) states in relevant part:

**2.** The court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

[¶ 25] In announcing her recusal, the justice was under no obligation to disclose the new information provided to the court after the verdict, and her subsequent recusal, based upon that new information, does not render suspect the impartiality of the justice at the time of the verdict. Consequently, Atwood has failed to show that he was deprived of an impartial tribunal. The court did not err in denying his motion for a new trial.

## B.  M.R. Evid. 803(3)

[¶ 26] Atwood next argues that the court abused its discretion by admitting into evidence testimony of Murdoch's stated belief that she would travel to Arizona with him on July 27, 2006. We review admissibility rulings for abuse of discretion. *State v. Mills*, 2006 ME 134, ¶ 8, 910 A.2d 1053, 1056. A trial court has abused its discretion on evidentiary issues "if the ruling arises from a failure to apply principles of law applicable to a situation resulting in prejudice." *State v. Bennett*, 658 A.2d 1058, 1062 (Me.1995) (quotation marks omitted).

[¶ 27] M.R. Evid. 803(3) permits the admission of hearsay statements to show the declarant's then existing state of mind.[4] Statements of a present intention to perform a future act are included within this exception. *State v. Philbrick*, 436 A.2d 844, 862 (Me.1981) (citing M.R. Evid. 803(3)). Furthermore, we have recognized that this hearsay exception applies to statements made by the declarant regarding the declarant's beliefs about the involvement of other people in the declarant's future plan. *State v. Cugliata*, 372 A.2d 1019, 1029 (Me.1977).

[¶ 28] For such statements to qualify as exceptions to the hearsay rule pursuant to M.R. Evid. 803(3), they must cast light upon the future, and be both highly reliable and highly relevant. *Philbrick*, 436 A.2d at 862.

[¶ 29] In *Cugliata*, we examined some of the factors indicating that a deceased victim's statements of a plan to take a trip with the defendants may be viewed as highly reliable. *Cugliata*, 372 A.2d at 1028. We determined that the statements at issue were highly reliable because they were: (1) made to both a family member and a close friend; (2) specific in detailing the declarant's future plan; and (3) very consistent. *Id.* In addition, we considered other corroborating evidence, namely, that the declarant was not at home the night he was supposed to leave for his trip. *Id.*

[¶ 30] Our holding in *Cugliata* is on all fours with the hearsay analysis presented here. First, the statements made by Murdoch regarding her plan to travel to Arizona only related to her future intentions, and did not concern past events or beliefs. Second, as in *Cugliata*, the statements were made several times to both family members and close friends, and the statements were specific and consistent. Finally, Murdoch's disappearance on the day she had stated that she was supposed to leave on a trip is a fact that may be viewed, pursuant to *Cugliata*, as independent corroborating evidence of the reliability of Murdoch's statements.

[¶ 31] Atwood argues that even if the statements may be viewed as reliable they do not satisfy the second requirement of

---

4.  M.R. Evid. 803(3) provides that the following types of statements are not excluded by the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition such as intent, plan, mo-

tive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

relevance. Contrary to Atwood's assertions, the court could properly consider these statements relevant to show that Atwood had an opportunity to commit the crime. *See State v. Allen*, 2006 ME 20, ¶ 18, 892 A.2d 447, 453 (stating that "all facts ... which constitute a link in the chain of circumstantial evidence with respect to the act charged are relevant and should be admissible"). Notably, the court limited the admissibility of the statements to those made during the week prior to Murdoch's disappearance. Because we conclude that the statements at issue satisfy the requirements set forth in *Cugliata*, and M.R. Evid. 803(3), the court did not abuse its discretion in admitting the testimony.

[¶ 32] We find Atwood's remaining arguments, including his contention that the court used testimony for impermissible character purposes, to be unpersuasive and do not address them separately.

The entry is:

Judgment affirmed.