MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2026 ME 6
Docket:      Pis-24-424
Argued:      September 11, 2025
Decided:     January 29, 2026

Panel:        STANFILL, C.J., and MEAD, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

## STATE OF MAINE

v.

## TERRI L. MOULTON

LAWRENCE, J.

[¶1]  Terri L. Moulton appeals from a judgment of conviction of one count of theft by unauthorized taking or transfer and one count of forgery, entered by the trial court (Piscataquis County, *Roberts, J.*) after a jury trial.  Moulton argues that the prosecutor made several prejudicial statements to the jury, depriving her of a fair trial; the trial judge abused his discretion in denying Moulton's motion to recuse; the State violated the rules of discovery; and the court abused its discretion in denying her motion to exclude all financial evidence.  We conclude that where the prosecutor's statements were error, the errors were harmless; the State did not violate the rules of discovery; the court did not abuse its discretion in denying the motion to recuse; and the court did not abuse

its discretion in denying the motion to exclude financial evidence as a discovery sanction.  We therefore affirm the judgment of conviction.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the verdict, the jury could have found the following facts beyond a reasonable doubt.  *See State v. Hansen*, 2020 ME 43, ¶ 2, 228 A.3d 1082.

[¶3]  Between 2019 and 2022, Moulton, who worked as a bookkeeper for Dewitt Machine and Fabrication, embezzled $500,000 from her employer and forged the signature of Anson Dewitt, a co-owner of Dewitt Machine, on checks that Moulton wrote to herself.

[¶4]  On March 3, 2022, a law enforcement officer met Moulton at her home and interviewed her about the alleged theft and forgery.  Moulton confessed to the theft, and her confession was captured in a video recording on the officer's body camera.  Specifically, Moulton stated that she "just spent [the money]" on "stuff"; that she was "sure that" the amount she had taken from Dewitt Machine was "significant"; that she wrote checks to herself using the Dewitt Machine business account, which she said was evidenced by all checks written out to her that were not payroll checks; and that "it just got away from [her], [she] didn't plan on it, [she] didn't scheme it."

[¶5] Moulton was charged by complaint in April 2022 with theft by unauthorized taking or transfer (Class B), 17-A M.R.S. § 353(1)(B)(1) (2025), and forgery (Class B), 17-A M.R.S. § 703(1)(A-1)(1) (2025). She was indicted on these same two charges in June 2022. Moulton pleaded not guilty to both charges.

[¶6] On December 19, 2022, Moulton filed a motion to compel discovery, seeking the password and login information for the electronic QuickBooks financial-records software that Dewitt Machine used for its bookkeeping. On January 30, 2023, Moulton withdrew the motion to compel discovery.

[¶7] In November 2023, Moulton filed a motion to suppress her confession that was recorded with the investigating officer's body camera, alleging that the confession was involuntary. The court (*Roberts, J.*) held a suppression hearing on February 5, 2024, and issued an order denying the motion on February 14, 2024.

[¶8] The court held a jury trial from July 22 to 25, 2024. Moulton moved for the trial judge to recuse himself because he had worked as a Deputy District Attorney for several years in the same office as the District Attorney representing the State in this matter. Moulton also moved to exclude financial evidence because the State did not provide defense counsel with the

4

QuickBooks password that defense counsel had asked the State to produce in December 2022. The court denied both motions.

[¶9] The court heard testimony from the following witnesses: a co-owner of Dewitt Machine, the manager of the bank that handled the Dewitt Machine business bank account, the person who recommended to the Dewitt family that they hire Moulton, the founder of Dewitt Machine, Anson Dewitt's spouse, a former co-owner of Dewitt Machine, a friend of Moulton's, an employee of the Piscataquis County District Attorney's Office who reviewed the financial records in this case and calculated the amounts that Moulton had taken from the Dewitt Machine business accounts, and the law enforcement officer who investigated the case and interviewed Moulton at her home in the recorded video.

[¶10] The court admitted the following exhibits: the video recording of Moulton's confession to the law enforcement officer, Dewitt Machine's bank records, a copy of the QuickBooks data, and a register of checks.

[¶11] During the trial, Moulton objected to various statements that the prosecutor made, and the court overruled the objections. Moulton also made multiple motions for a mistrial and a motion for judgment of acquittal, all of which the court denied. The evidence presented included Moulton's multiple

confessions to having taken money from Dewitt Machine for her personal use, including the video recording of her confession to a law enforcement officer, and her statement to the business's co-owner that she took the money because she "just needed stuff . . . and she would pay it all back"

[¶12]  The jury found Moulton guilty on both charges.  The court held a sentencing hearing in September 2024, and Moulton was sentenced to nine years for each of the counts, to be served concurrently, with all but four years suspended, and three years of probation.

[¶13]  Moulton timely appealed from the conviction.  *See* M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

### A.    Prosecutorial Error[1]

[¶14]  Moulton argues that the prosecutor for the State made several comments during opening statements, closing argument, and rebuttal argument that prejudiced Moulton to such an extent that the jury's determination of guilt was affected by the prosecutor's choice of words.

---

[1] Moulton refers to the prosecutor's statements as both "misconduct" and "error" in her brief.  We use the term "error" here because we focus our review on the impact of the prosecutor's behavior on Moulton's due process rights and not on the subjective intent of the prosecutor.  *See State v. Osborn*, 2023 ME 19, ¶ 21 n.9, 290 A.3d 558; *State v. White*, 2022 ME 54, ¶ 19 n.9, 285 A.3d 262.

Moulton objected to some of the statements made during closing and rebuttal arguments; therefore, they are reviewed for harmless error. *See State v. Dolloff*, 2012 ME 130, ¶¶ 31-32, 58 A.3d 1032. Moulton did not object to the statements made during the State's opening statement and a statement made during closing argument; therefore, those statements are reviewed for obvious error. *See id.* ¶¶ 31, 35.

### 1. Statements Objected to at Trial

[¶15]  When a prosecutor's statement is objected to at trial, we review the statement for harmless error by "determin[ing] whether there was actual [error] and, if so, whether the trial court's response remedied any prejudice resulting from the [error]." *State v. Tripp*, 2024 ME 12, ¶ 27, 314 A.3d 101 (quotation marks omitted).  Under harmless-error review, the State carries the burden of persuasion on appeal. *Dolloff*, 2012 ME 130, ¶ 34, 58 A.3d 1032. "When prosecutorial [error] that was objected to has not been addressed or only insufficiently addressed by the court, the State must persuade us that it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments." *Id.* (quotation marks omitted).  When determining the effect of the error, we look to "the totality of the circumstances, including the severity of the [error], the prosecutor's purpose in making the statement,"

and "the weight of the evidence supporting the verdict." *Id.* ¶ 33 (quotation marks omitted).

[¶16]  We must view the allegations of prosecutorial error in the overall context of the trial.  "This includes taking into account the statements, comments, and strategy of the defense, especially when the prosecutor's statements are made in response to the theory, argument, or provocation of the defendant or defense counsel.  The mere existence of a misstatement by a prosecutor at trial, or the occasional verbal misstep, will not necessarily constitute [error] when viewed in the context of the proceedings." *Id.* ¶ 44 (citations omitted).

[¶17]  Moulton objected to the prosecutor's comment made during closing statements that "addressed [Moulton]'s choice to exercise her constitutional right to have a trial."  The prosecutor stated:

> Now, you might—this is something that you might want to be thinking about, well, [District Attorney], why are we—the defendant in this case confessed, so why are we having a trial?  We need to understand that we need to respect the process.  Everybody is entitled to have a trial. . . . [W]e are having a trial, the defendant is entitled to a trial, we are not disparaging that, despite the evidence that shows on different occasions that she admitted what happened, and we will talk about that.

Defense counsel objected to the statement and moved for a mistrial.  The court denied the motion and asked the prosecutor not to make any insinuation that

8

Moulton does not have a right to a trial. The State argues that the prosecutor conveyed that Moulton has a right to a trial and did not call this right into question. The State argues in the alternative that the statement was harmless error because the comment was isolated, the court instructed the jury that closing arguments are not evidence, there is a presumption of innocence, and the evidence of Moulton's recorded video confession to the law enforcement officer overcame any prejudice that would have affected the outcome of the case.

[¶18] Of course, Moulton has the right to a fair trial under both the United States and Maine Constitutions. U.S. Const. amends. VI, XIV, § 1; Me. Const. art. 1, § 6; *State v. Poulin*, 2016 ME 110, ¶ 25, 144 A.3d 574. The State may not question this right in front of the jury. *See State v. Lockhart*, 2003 ME 108, ¶ 48, 830 A.2d 433 ("[T]he prosecutor has a responsibility to help ensure a fair trial, and although permitted to strike hard blows, may not strike foul ones." (quotation marks omitted)). While the prosecutor here acknowledged Moulton's constitutional right, the acknowledgment was couched in such qualifying language that it implied that the trial was a formality. Moreover, the prosecutor's comment on Moulton's right to a trial was not germane to the analysis of any evidence or the proper inferences and conclusions to be drawn

from the evidence. *See Dolloff*, 2012 ME 130, ¶¶ 41, 55, 58 A.3d 1032. Therefore, Moulton is correct that this was prosecutorial error.

[¶19]   However, in the context of the entire record, this error was harmless because the quantity and quality of the evidence presented to the jury against Moulton was so extensive and of such a high degree that the error could not have affected the outcome. *State v. Lyons*, 1998 ME 225, ¶ 13, 718 A.2d 1102 (holding that the error of ambiguously referring to the defendant's failure to testify was harmless due to the substantial evidence of the defendant's guilt). Here, the substantial evidence presented included Moulton's multiple confessions to taking money from Dewitt Machine for personal use, the most striking of which was the video recording of her confession made to the investigating law enforcement officer, whom she knew.

[¶20]  Importantly, the court gave an appropriate curative instruction to the jury following the closing arguments of the parties:

> Let me remind you that the attorney's opening statements and closing arguments are not evidence.   Those are simply the statements and arguments of the attorneys for the State and the defendant, in which they suggest to you what they think are the proper methods for analyzing the evidence and what they believe are the proper inferences and conclusions to be drawn from that evidence.   The statements and arguments themselves are not evidence from which you can find the facts.   During your deliberations, if your memory of the evidence differs from what the

    attorneys say in the statements and arguments, it is your memory that controls.

We assume that the jury followed these instructions unless there is evidence to the contrary. *State v. Bennett*, 658 A.2d 1058, 1063 (Me. 1995).

[¶21]   Moulton next objected to a comment made during closing argument in which the prosecutor mentioned potential punishment to the jury:

> Your job is to decide what the facts show and then take the facts as you find them and apply it to the verdict that he gives you—excuse me, apply it to the law, then come to a verdict. So [the court] gives you the law, you take the facts and you make a decision. Now, one of the things you are not here to do is decide what punishment there is, if any[.] [P]unishment is up to this learned presiding justice.

Defense counsel objected to this statement on the basis that any discussion of punishment by the State in its closing argument is inappropriate, but the court overruled the objection. Moulton argues that this statement injected the prosecutor's personal opinion of her guilt into the process. The State argues that the statements regarding punishment did not constitute error because they did not express the prosecutor's personal opinion and because "the prosecutor correctly stated the law and committed no error in stating that the jury decides only the question of guilt and does not address punishment."

[¶22]   We disagree with Moulton's argument that this statement represents the prosecutor's personal opinion of her guilt. Just before the

prosecutor's mention of punishment, the prosecutor stated that it was up to the jury to decide the facts and make a decision as to Moulton's guilt. The statement regarding punishment was a correct statement of the law—the jury does not decide how a defendant may be punished. *State v. Okie*, 2010 ME 6, ¶ 11, 987 A.2d 495; *State v. Park*, 193 A.2d 1, 5 (Me. 1963) ("Punishment, or whatever may transpire after the verdict, is not the concern of the jury."). However, instructing the jury on this legal point is not the prosecutor's role, and it is instead the court's duty to instruct the jury as to the law. *See Okie*, 2010 ME 6, ¶ 11, 987 A.2d 495. The State must limit its argument to the facts in evidence. *State v. Hinds*, 485 A.2d 231, 237 (Me. 1984). To the extent that this is error, and we acknowledge that this is a close call, we hold that it is harmless for the reasons discussed above, *supra* ¶¶ 19-20.[2]

[¶23]  Finally, Moulton objected to the prosecutor's comments during rebuttal in which the prosecutor stated:

> [Dewitt Machine] trusted her. . . . [J]ust imagine that folks, knowing that you are being relied on and being trusted and sit right there and not say anything. That's sad. That's really sad. That's a betrayal.

---

[2]  The court also instructed the jury that "[y]ou should not be concerned about the consequences of any verdict you may reach," further correcting any error by the State.

12

Moulton again moved for a mistrial, which the court denied, stating that "[a]rguments of counsel are simply that, arguments. [The prosecutor] did not, in the Court's view, in [any] way say anything that would comment upon Ms. Moulton's decision not to testify or to shift the burden of proof, which would be the sort of argument that would give you a position for a mistrial . . . ." Moulton argues that the prosecutor's statement did not address the evidence but instead attempted to appeal to the jury's sympathies and social norms. The State asserts that the theme of trust and betrayal was supported by the evidence and was not error.

[¶24] A prosecutor cannot "invite the jury to make its decision based on something other than the evidence," nor can a prosecutor appeal to social norms that go beyond the evidence presented to the jury. *State v. Osborn*, 2023 ME 19, ¶ 23, 290 A.3d 558 (quotation marks omitted). Moreover, a prosecutor's comments cannot pander to the jury's sympathy, bias, or prejudice, *Dolloff*, 2012 ME 130, ¶ 42, 58 A.3d 1032; nor should a prosecutor appeal to a jury's sense of morality in arguing the evidence presented. *See State v. Ammerman*, 586 A.2d 1244, 1246 (Me. 1991).

[¶25] Here, the theme of trust and betrayal went beyond the evidence presented. Neither theft by unauthorized taking or transfer nor forgery require

the State to prove that a victim placed trust in a defendant. *See* 17-A M.R.S. § 353(1)(A)-(B)(1); 17-A M.R.S. § 703(1)(A)-(A-1)(1); *cf.* 17-A M.R.S. § 903 (2025) ("A person is guilty of misuse of entrusted property if that person deals with property that has been entrusted to that person as a fiduciary . . . in a manner that that person knows is a violation of that person's duty . . . ."). Instead, asking the jury to imagine themselves in Moulton's shoes as someone who lied to the people who trusted her is a direct appeal to the jury's sense of morality and sympathy. *See Ammerman*, 586 A.2d at 1246. This statement was prosecutorial error.

[¶26] Nevertheless, the error was harmless given the overwhelming evidence of guilt presented to the jury—a direct confession to law enforcement, among other confessions—and the corrective instruction given by the court. *See Lyons*, 1998 ME 225, ¶ 13, 718 A.2d 1102; *supra* ¶¶ 19-20.

### 2. Statements Not Objected to at Trial

[¶27] "[W]hen a defendant has not objected to statements made by the prosecutor at trial, and subsequently asserts on appeal that those statements constituted prosecutorial [error] that deprived her of a fair trial, we review for obvious error." *Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032. The obvious-error standard requires the defendant to show that there is "(1) an error, (2) that is

plain, and (3) that affects substantial rights." *State v. Nightingale*, 2023 ME 71, ¶ 29, 304 A.3d 264 (quotation marks omitted). "If these three conditions are met, we will set aside the jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

[¶28] A defendant who fails to object to a statement at trial must on appeal demonstrate that there was prosecutorial error that went unaddressed by the court. *See Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032. The error is plain if "the error is so clear under current law[] that the trial judge and prosecutor were derelict in countenancing it . . . ." *Id.* (citation and quotation marks omitted). A defendant's substantial rights are affected if "the error was sufficiently prejudicial to have affected the outcome of the proceeding." *Nightingale*, 2023 ME 71, ¶ 30, 304 A.3d 264 (quotation marks omitted).

[¶29] Moulton asserts for the first time on appeal that the prosecutor made two more statements on the theme of trust and betrayal that commented on concepts of morality and were sufficiently prejudicial as to have affected the outcome of the trial. The prosecutor made the following comments during the opening statement:

> [Dewitt Machine] trusted her. They trusted her. As the case develops, folks, you are going to realize that starting in 2019,

[Moulton] betrayed that trust, betrayed that trust, that's what this case is about, trust, and betrayal.

. . . .

This is a serious case. It is called betraying the trust that that family put in [Moulton].

[¶30]   The comment above was directly linked to another statement made during the State's closing argument:

[T]he scale of this theft is huge. You know something, folks, it is outweighed, outweighed only by one thing, and that's by the magnitude of [Moulton]'s betrayal of the trust that [Dewitt] and his family put in her. That's what this case is about, folks.

These statements satisfy the first and second elements of the obvious-error test because the prosecutor's consistent return to the theme of trust and betrayal is an appeal to the jury's morality and sympathy, and the error is plain as established in our case law. *See, e.g., Dolloff*, 2012 ME 130, ¶¶ 36, 53, 58 A.3d 1032; *supra* ¶¶ 24-25. However, Moulton's substantial rights were not affected because these prejudicial comments do not outweigh the evidence of her guilt and therefore did not affect the outcome of the trial or deprive Moulton of a fair trial. *Dolloff*, 2012 ME 130, ¶¶ 37, 69, 58 A.3d 1032; *supra* ¶¶ 19-20.

### 3.    Cumulative Effect of Prosecutorial Errors

[¶31]   Finally, we review Moulton's alleged instances of prosecutorial errors "cumulatively and in context to determine whether [Moulton] received

an unfair trial that deprived her of due process." *Dolloff*, 2012 ME 130, ¶ 74, 58 A.3d 1032. "Multiple 'incidents of prosecutorial [error], none of which individually would require reversal, taken together may have a cumulative effect' of violating a defendant's right to a fair trial." *Id*. (quoting *United States v. Mooney*, 315 F.3d 54, 61 (1st Cir.2002)).

[¶32] First and foremost, the substantial evidence of Moulton's guilt weighs against the cumulative prejudice of the prosecutorial error in this case. The video-recorded confession and significant testimonial and financial documentary evidence were more than sufficient to support a guilty finding. Moreover, the court properly instructed the jury to not view opening statements and closing arguments as evidence, Moulton had "the assertive assistance of counsel," and Moulton was able to confront witnesses and present witnesses on her own behalf. *Id*. ¶ 75. We therefore conclude that any prosecutorial error, individually or cumulatively, did not affect the jury's verdict and Moulton received a fair trial.

[¶33] We must note, however, that the prosecutorial error in this case is not insignificant, and in a different case with different facts could lead to reversal. We remind prosecutors of their special responsibility to help ensure

a fair trial and avoid striking any foul blows.  *See Lockhart*, 2003 ME 108, ¶ 48, 830 A.2d 433.

**B.      Motion to Recuse**

[¶34]  Moulton argues that the court abused its discretion in denying her motion to recuse because the trial judge previously worked in the District Attorney's Office as an Assistant District Attorney and as the Deputy District Attorney with the prosecutor here, the District Attorney.  Moulton contends that the trial judge should have assessed whether he was "wholly free, disinterested, impartial and independent," citing *State v. Marden*, 673 A.2d 1304, 1308 (Me. 1996) (quotation marks omitted), and instead the trial judge abused his discretion by only considering whether he could "handle the case fairly and without bias."

[¶35]  The State argues that the court properly denied the motion for recusal because the trial judge had not worked for the District Attorney's Office for nearly nine years.  The trial judge worked in an office separate from the District Attorney for much of his tenure, had not had a personal relationship with the District Attorney since leaving the office, and was not the fact finder in this case.  The State adds that if the court did err in denying the motion for recusal, the error was harmless.

[¶36]  "We have long held that recusal 'is a matter within the broad discretion of the trial court.'  Accordingly, a decision by a trial judge not to recuse is reviewed for an abuse of discretion."  *State v. Atwood*, 2010 ME 12, ¶ 20, 988 A.2d 981 (quoting *Johnson v. Amica Mut. Ins. Co.*, 1999 ME 106, ¶ 11, 733 A.2d 977).

[¶37]  Citing the Maine Code of Judicial Conduct, we have held that "a judge must recuse herself on motion made by any party if her 'impartiality might reasonably be questioned' or if she has a 'personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.'  The 'mere belief' that a judge might not be completely impartial is insufficient to warrant recusal."  *Atwood*, 2010 ME 12, ¶ 21, 988 A.2d 981 (citations omitted); M. Code Jud. Conduct R. 2.11.

[¶38]  Here, the trial judge explained his denial of the motion for recusal as follows:

> [W]hile I worked with [the District Attorney] for years, we did not necessarily work most of that time in the same office.  We have not really had a personal relationship since I left that office almost nine years ago.  I do speak with him on a professional level, but very little that, and I can assure you, particularly in the matter such as this where I am not the fact finder, the jury will be the fact finder, I am confident I can handle this matter as I have other matters which [the District Attorney] prosecuted fairly and without bias.

The trial judge in this case made a well-reasoned decision not to recuse given the nearly nine years since the trial judge worked with the District Attorney, and the lack of a current personal relationship with the District Attorney and seemingly not ever having had a particularly close personal or professional relationship with him.

[¶39]  Moulton's argument that the court did not apply the appropriate legal analysis is without merit.  When deciding whether to recuse, a judge must look to the guidelines established in the Maine Code of Judicial Conduct, as stated above.  *See Atwood*, 2010 ME 12, ¶ 21, 988 A.2d 981.  A determination by a judge that he is "wholly free, disinterested, impartial and independent" as described in *Marden*, which was cited by Moulton, falls within the standard established in the Maine Code of Judicial Conduct, *see Marden*, 673 A.2d at 1308; M. Code Jud. Conduct R. 2.11, as does the trial judge's consideration as to whether he can preside over the matter "fairly and without bias."  It has been over nine years since the trial judge worked in the District Attorney's Office, and the trial judge stated that he had no relationship since then with the prosecutor—other than in their current professional roles as judge and prosecutor.  We are not persuaded that the trial judge abused his discretion, nor are we persuaded that the public would doubt his impartiality.

[¶40]  Because trial courts have broad discretion to decide whether to recuse themselves from a matter and because "mere belief that a judge might not be completely impartial is insufficient to warrant recusal," we conclude that the court did not abuse its discretion in denying the motion to recuse. *See Atwood*, 2010 ME 12, ¶ 21, 988 A.2d 981 (quotation marks omitted).

## C.    Disclosure of Financial Records

[¶41]  Moulton argues that the State's failure to disclose the password to access QuickBooks—the bookkeeping software that Dewitt Machine used—and the trial court's rulings regarding that alleged discovery violation denied Moulton her right to a fair trial.  Moulton "concede[s] [that she] was provided with copies of voluminous financial records" but contends that she needed access to the electronic version of these financial records to be able to investigate whether the financial records were altered before they were produced to her.  As a result, Moulton argues that she did not have access to information that she needed to prepare for trial, as required by M.R.U. Crim. P. 18(b).

[¶42]  The State argues that it did not violate its discovery obligations because it did not have the QuickBooks password and it is not required to provide information that it does not have.  The State contends further that

Moulton's motion for discovery sanctions was untimely and unpreserved and that Moulton had other options, such as a subpoena, to obtain the QuickBooks electronic records.

[¶43] "We afford the trial court substantial deference in overseeing the parties' discovery[] and review its decisions on alleged discovery violations only for an abuse of discretion. Only when the defendant can establish that the effect is so significant as to deprive [her] of a fair trial will we vacate on that basis."[3] *State v. Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230 (citation omitted).

[¶44] We agree with the court that the State is not required to produce information outside of its "possession or control." *See State v. Hassan*, 2018 ME 22, ¶ 18, 179 A.3d 898; M.R.U. Crim. P. 16(a)(1), (c)(2)(C). The QuickBooks password was not provided to the State and therefore not within its possession or control. The State attempted to obtain the password for Moulton by asking the Dewitts for it, but the Dewitts declined to provide it.

[¶45] To the extent that the State committed a violation of the rules of discovery by failing to respond to Moulton's motion to compel discovery within seven days as required by M.R.U. Crim. P. 16(d)(2), the violation was negated

---

[3] The State contends that the issue is not preserved because Moulton withdrew her motion to compel discovery. However, the issue was argued and developed during the first and second days of trial.

22

by Moulton withdrawing her motion six weeks after initially filing it. As the court indicated, a year and a half passed before Moulton brought the discovery issue to the court's attention during the first day of trial. During that time, Moulton did not file a second motion to compel discovery or take other actions beyond Moulton's representations that counsel communicated the need for the password to the State directly. Eventually, the State informed Moulton that it did not have the password. Given that Moulton revived this issue only on the first day of trial after the jury had been selected, the court did not abuse its discretion in ruling that raising the issue at that point was untimely.

[¶46] Although Moulton's lack of access to the QuickBooks password may have prevented her access to the electronic data, she had access to hard copies of the company's financial records. Further, she had confessed to taking funds from the Dewitts, including by writing checks on the company account to herself beyond those that were her paychecks. Considering these factors, Moulton has failed to demonstrate that the effect of not having the QuickBooks password and the court's denying her motion at trial was so significant as to deprive her of a fair trial. Therefore, the trial court did not abuse its discretion.

### III. CONCLUSION

[¶47] To be clear, the prosecutor's statements at issue here skirted, and in several instances crossed, the line into error. Ultimately, however, for the reasons set out above, we have concluded that the errors, singly and cumulatively, did not affect Moulton's substantial rights and were rendered harmless by the overwhelming weight of the evidence of her guilt presented to the jury, and in particular by Moulton's own video-recorded confession to the crime. We also conclude that the trial judge did not abuse his discretion in denying the motion to recuse or in ruling that in the circumstances presented the State was not required to produce passwords to the QuickBooks software.

The entry is:

Judgment affirmed.

Neil J. Prendergast, Esq. (orally), Fort Kent, for appellant Terri L. Moulton

R. Christopher Almy, District Attorney, and Mark A. Rucci, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Piscataquis County Unified Criminal Docket docket number CR-2022-170
FOR CLERK REFERENCE ONLY